The Hon. Mary K. Dimke

Beck Chase Gilman PLLC
705 S. Ninth Street, Suite 305
Tacoma, WA 98405
253.289.5104

United States District Court
Eastern District of Washington

| | |
|---|---|
| Robert Theodore Kinnune,<br><br>            Plaintiff,<br><br>Vs.<br><br>State of Washington, Washington State Department of Social and Health Services,<br><br>            Defendants. | No. 2:23-cv-00026-MKD<br><br>**Plaintiff's Motion to Limit Testimony of Defense Economist Erick West**<br><br>11/17/23<br>Without Oral Argument |



## I.   Introduction & Relief Requested

Defense economist Erick West opines that economic damages should be reduced to $0 because Robert Kinnune mitigated his losses by taking a job where his compensation includes a nontaxable clergy housing allowance. This is problematic for several reasons. First, numerous policies dictate that "[t]he 'general rule' is that the plaintiff's recovery should not be reduced by the amount of money saved in tax consequences avoided or incurred as a result of the defendant's wrongful conduct." *Osborn v. Griffin*, 865 F.3d 417, 453 (6th Cir. 2017) (collecting cases). Second, West cannot give a legal opinion on the open question of whether Kinnune was entitled to the same tax exemption while employed by Defendants. Third, even if he could, West is not a tax expert.

Kinnune respectfully requests that the Court prohibit West from testifying about the potential impact of past or future tax implications on economic damages.

## II.   Background

Kinnune was called up for military service while employed as a Chaplain at Eastern State Hospital ("ESH"). ECF No. 2-2 at ¶ 3.6. Shortly before his return from military service, ESH informed Kinnune that it was keeping his interim replacement—Kinnune's former intern—on as a co-Religious Coordinator; that Kinnune would now be sharing his duties with her; and that she would be taking his leadership positions. *Id.* at ¶¶ 3.12, 3.20. After experiencing a hostile work environment based on his military service and opposition to the changes in his role, Kinnune sought and was granted "Governmental Service Leave" to work for the Spokane County Sheriff Department. *Id.* at ¶¶ 3.21–.25. In his absence, ESH failed

Pl.'s Motion to Limit Expert – 2
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

to take action to remedy the unlawful treatment Kinnune was experiencing, and he determined he could not return. *Id.* at ¶ 3.31. He continued to work for the Sheriff Department via his direct employer, Christian Outreach for Police and Spouses.

Kinnune filed suit alleging Defendants violated his USERRA rights, including the right to be returned to the same position after his military service, and discriminated against him based on his military status in violation of the Washington Law Against Discrimination ("WLAD"). *Id.* at ¶¶ 4.1–5.3.

### III. Expert Opinions

West's primary opinion is that "*Mr. Kinnune has sustained <u>zero economic damages</u>, past or future, as Mr. Kinnune's compensation from DSHS has been fully mitigated by his earnings at his current employer, Christian Outreach for Police and Spouses.*" Gilman Decl., Ex. A ("Report") at 1 (emphasis in original). West bases this on a tax exemption for clergy housing, implicitly concluding without analysis that the same exemption was not available to Kinnune while at ESH. West's report states:

> Mr. Kinnune's mitigation compensation is unique in the sense that, as a minister, the cash housing allowance that he receives each month is <u>not</u> subject to federal income taxes or payroll taxes. Therefore, there is a premium, or fringe benefit, associated with the housing payments in comparison to his DSHS salary, which must be accounted for in the economic loss analysis.

*Id.* at. 7.

Kinnune has since learned that while he was employed by ESH, he may have been entitled to the same nontaxable housing allowance that he receives from his current employer. Kinnune Decl. at ¶ 2. In particular, Kinnune was previously unaware of RCW 41.04.360, which contemplates that forty percent of a State-

Pl.'s Motion to Limit Expert – 3
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

employed religious coordinator's salary may be designated as a "housing/rental allowance." *Id.* Kinnune is currently working with his tax professional to determine whether he can file amended federal tax returns for his time at ESH. *Id.*

## IV. Discussion

District courts are tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). The party offering expert testimony has the burden of establishing admissibility. *Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).

Here, the State cannot meet that burden as West's opinions about tax implications are not relevant, and thus not helpful to the jury. Even if juries could be called upon as judicial tax accountants, West's legal opinion is impermissible. Further still, it is unreliable as he lacks qualifications as a tax professional.

**A. Juries do not decide the potential tax implications of damage awards.**

As noted, "[t]he 'general rule' is that the plaintiff's recovery should not be reduced by the amount of money saved in tax consequences avoided or incurred as a result of the defendant's wrongful conduct." *Osborn*, 865 F.3d at 417 (citing *Burdett*

Pl.'s Motion to Limit Expert – 4
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

*v. Miller*, 957 F.2d 1375, 1383 (7th Cir. 1992); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989)). Indeed, "[m]ost courts addressing the issue of whether tax benefits should be considered in an award of damages, in various kinds of actions, have found that they should not." *Resolution Tr. Corp. v. Fleischer*, 880 F. Supp. 1446, 1451 (D. Kan. 1995) (collecting cases); *see also* RESTATEMENT (SECOND) TORTS § 914A (discussing rationale for majority rule that "no reduction need be calculated for the absence of income taxes" in connection with award of lost future earnings).

The Supreme Court and the Ninth Circuit have held that tax implications should not be considered when assessing damages. *E.g.*, *Randall v. Loftgaarden*, 478 U.S. 647, 651–52 (1986) (recissory recover in securities case should not be reduced by tax benefits from a tax shelter); *Hanover Shoe, Inc. v. Utd. Shoe Mach. Corp.*, 392 U.S. 481 (1968) (Court of Appeals erred in requiring recomputation of damages based on tax implications in federal antitrust case); *Hall v. Johnston*, 758 F.2d 421, 424 (9th Cir. 1985) ("We . . . have refused to deduct tax benefits in a securities case." (citing *W. Fed. Corp. v. Erickson*, 739 F.2d 1439, 1444 (9th Cir. 1984); *Burgess v. Premier Corp.*, 727 F.2d 826, 837–38 (9th Cir. 1984) ("To simply subtract tax benefits from damages would place an unfair burden on taxpayers generally."))).

While the general rule is often articulated in securities or fraud cases, the underlying rationales have broader implications. As Judge Posner explained:

> Suppose, to take a simpler case, that [the defendant] had tortiously destroyed [the plaintiff's] Ming vase worth $10,000 and [the plaintiff] had deducted this amount as a casualty loss on her federal income tax return, garnering a tax saving of $3,000. [The defendant] could not in the ensuing tort suit deduct the $3,000 from the damages due [the plaintiff]. *The tort caused a harm of $10,000, and the*

PL.'S MOTION TO LIMIT EXPERT – 5
No. 2:23-cv-00026-MKD

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

> *fact that the plaintiff was able to lay off a part of the harm on someone else—the taxpayer—is not a good reason to cut down the tortfeasor's damages.* It is true that the result is a windfall to the plaintiff, *but this is better than an equivalent windfall to the tortfeasor.* . . .

*Burdett*, 865 F.3d at 1383 (emphasis added). Moreover, because of uncertainties in the Tax Code, "[a]ctually we don't know how the Internal Revenue Service will treat [the plaintiff's] award of damages . . . . But the only important point here is that the tax treatment of the damages award is irrelevant to the defendant's liability; it is a matter between the plaintiff and the government." *Id.*

State courts also follow the general rule. *E.g.*, *DePalma v. Westland Software House*, 225 Cal.App.3d 1534, 1540, 276 Cal.Rptr. 214 (1990) (California "courts have consistently prohibited evidence of tax considerations in the trier's determination of damage awards" and "all of the cases we have found [from other states] hold tax consequences should not be considered as offsets for defendants . . . ."); *Billings Clinic v. Peat Marwick Main & Co.*, 244 Mont. 324, 346–47, 797 P.2d 899 (1990) ("Evidence of the tax benefits to the individual doctors would be speculative in the extreme . . . . 'The tax liability of today is no criterion of what it may be tomorrow. It has a faculty of constantly increasing in the face of vocal threats of reduction usually made on the evening of an election.'"); *Munson v. Boettcher & Co., Inc.*, 832 P.2d 967, 969 (Colo. App. 1991), *aff'd*, 854 P.2d 199 (Colo. 1993) ("tax benefits . . . are improper factors in a damages assessment"); *Cereal Byproducts Co. v. Hall*, 16 Ill. App. 2d 79, 81–82, 147 N.E.2d 383, 384 (Ill. App. Ct. 1958) ("On defendants' theory every suit for damages would necessitate consideration of the income taxes saved by the plaintiff . . . .").

Pl.'s Motion to Limit Expert – 6
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

The opinion in *DePalma* provides a thorough summary of the various rationales, articulated in the above authorities and others, for excluding tax implications from the jury's determination of damage awards. 225 Cal.App.3d at 1541–46. It explains, among other things, that: "It is not within this court's jurisdiction to decide whether the tax benefit rule would apply to respondent in this circumstance: that is a matter for the Internal Revenue Service and the federal court system." *Id.* at 1541–42. "Estimating tax benefits is speculative, time consuming, and confusing" and evidentiary rules thus "prohibit the admission of tax consequences." *Id.* at 1544 (capitalization omitted). And even assuming *arguendo* that a plaintiff would receive a windfall recovery, public policy demands that taxpayers should not "subsidize those who have not fulfilled their contractual obligations . . . . [T]his court favors parties who honor their promises, not those who breach them." *Id.* at 1546.

In Washington, the WLAD's damage provisions are "construed liberally," RCW 49.60.020, and a successful WLAD plaintiff is entitled to "become whole" through "a full panoply of compensatory damages." *Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 574, 919 P.2d 589 (1996). Plaintiff is unaware of any Washington case, under the WLAD or otherwise, wherein a jury was tasked with adjusting a damage award based on potential tax implications. Washington's pattern civil jury instructions for damages—in WLAD employment discrimination cases specifically,

Pl.'s Motion to Limit Expert – 7
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

and other areas more generally—make no mention of potential tax implications as a factor in setting damages. WPI 330.81–83[1]; *see also* WPI 30.00–35.01, 303.01–.08.

Furthermore, the reasons for excluding evidence of tax implications apply with equal or greater force here. First, West—who is not a tax professional—simply assumes that Kinnune is not entitled to a housing allowance exemption for his time at ESH, relying on "the payroll records produced as well as Mr. Kinnune's W-2 statements." Report at 7 n.5. However,

> In the case of a minister or other clergyperson employed as a religious coordinator in a state institution or agency, there is designated in the salary or wage paid to the person an amount up to forty percent of the gross salary as either of the following:
>
> (1) The rental value of a home furnished to the person as part of the person's compensation; or
>
> (2) The housing/rental allowance paid to the person as part of the person's compensation, to the extent used by the person to rent or provide a home.

RCW 41.04.350. According to West, "[e]mployers are not required to report the housing allowance amount on the W-2 statement . . . ." Report at 5. So the fact that ESH did not *identify* compensation on Kinnune's W-2s as tax exempt, or that

---

[1] Consistent with the WLAD's liberal construction, Washington recognizes that "[a] *plaintiff* may recover an offset for the federal income tax consequences" of receiving a lump sum payment in a single tax year. Cmt. to WPI 330.81 (discussing *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 217–18, 87 P.3d 757 (2004)). But that plaintiff-friendly offset is recoverable through a post-trial motion, "rather than as actual damages" determined by the jury. *Id.*

Pl.'s Motion to Limit Expert – 8
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

Kinnune did not previously claim the exemption, does not mean he is not legally *entitled* to it. Indeed, Kinnune, who is now aware of the issue, has consulted his tax professional and is intending to investigate and, if appropriate, file amendments to his federal tax returns for the years he worked at ESH. Kinnune Decl. at ¶ 2. That is an issue between the Kinnune and the IRS. *E.g.*, *Burdett*, 865 F.3d at 1383.

Relatedly, tasking the jury with calculating potential tax implications is necessarily speculative and needlessly confusing. *DePalma*, 225 Cal.App.3d at 1544 ("We are concerned even the most sophisticated attempts to make a prediction about tax consequences would result in only guesswork which has little probative value."). It could also result in double taxation. *Hanover Shoe*, 392 U.S. at 503.

Moreover, "tax benefits should be received by only those for whom the government intended them," not those who violate the law. *DePalma*, 225 Cal.App.3d at 1546–47 (tax credit to encourage particular action by the plaintiff should not "be taken from the [plaintiff] and credited to [defendant]" as this would "be at odds with the purpose of the credit."). Here, the federal clergy housing allowance is intended to benefit *clergy*, not employers who violate their legal rights.

Furthermore, even if one could speculate about a potential hypothetical windfall to a plaintiff, "it is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them." *Randall*, 478 U.S. at 663.

As the proponent of West's expert testimony, Defendants bear the burden of showing why this Court should break from the general rule, and why Washington courts would disregard that majority rule to reduce a WLAD plaintiff's damages based on potential tax implications. Defendants cannot do so.

Pl.'s Motion to Limit Expert – 9
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

**B. West cannot opine on the legal issue of past entitlement to the clergy housing allowance exemption, and even if he could, he lacks data and qualifications.**

While jurors are not tasked with deciding the tax implications of the damages caused by defendants, reliance on West's opinions would still be misplaced because he cannot testify about his legal conclusions. Even if he could, West lacks the requisite data and expertise related to taxation issues.

"[A]n expert cannot testify to a matter of law amounting to a legal conclusion." *United States v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015). Here, West's opinion necessarily requires him to testify to the legal conclusion that Kinnune was *not* entitled to the clergy housing allowance exemption at ESH. This is not allowed.

Even so, West lacks both the data and credentials to assert that Kinnune cannot amend his prior tax returns to benefit from the housing allowance, particularly in light or RCW 41.04.350, which he neither mentions nor analyzes. An expert opinion must be based on sufficient facts or data. Fed. R. Evid. 702. Otherwise, it should be excluded. *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830–31 (9th Cir. 2001). The rules also "require[] that the expert stay within the bounds of his expertise." *Stewart Title Ins. Co. v. Credit Suisse*, 2015 WL 4250704, at *11 (D. Idaho July 13, 2015) (discussing *Avila v. Willits*, 633 F.3d 828 (9th Cir. 2011)); *see also Miller v. Adonis*, 2019 WL 4076441, at *4 (E.D. Cal. Aug. 29, 2019) (collecting cases).

Underscoring these deficiencies is West's characterization of a potential tax exemption as a "fringe benefit." Report at 7. It is not. The term refers to "[a] benefit (other than direct salary or compensation) received by an employee *from an employer*, such as insurance, a company car, or a tuition allowance." BENEFIT, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see also Bellevue Sch. Dist.*

Pl.'s Motion to Limit Expert – 10
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

*No. 405 v. Bentley*, 38 Wn. App. 152, 158–59, 684 P.2d 793 (1984) ("Fringe benefit is defined as 'an employment benefit (as a pension . . . .) *granted by an employer* that involves a money cost without affecting basic wage rates.'" (quoting Webster's 3d Int'l Dictionary, at 912 (1971) (emphasis added)). West cites no authority for his assertion, which is at odds with the plain meaning of the term and Washington law. Nor does he claim or demonstrate that it is generally accepted in the field of economics (or, more relevantly, tax accounting) to treat tax exemptions that may or may not benefit a particular household as "fringe benefits" akin to a company car. Defendants cannot seek to have the jury account for tax implications as if they are an element of compensation paid by an employer by merely having the defense expert proclaim that they are "fringe benefits."

## V. Conclusion

West's opinions regarding potential tax implications are irrelevant, improper, speculative, confusing, inadequately supported, beyond his qualifications, and unhelpful to the jury. The Court should limit his anticipated testimony accordingly.

Respectfully submitted September 28, 2023.

Beck Chase Gilman PLLC

By: _____
James W. Beck, WSBA No. 34208
james@bcglawyers.com | D 253.289.5122
Eric D. Gilman, WSBA No. 41680
eric@bcglawyers.com | D 253.289.5108
Janelle E. Chase Fazio, WSBA No. 51254
janelle@bcglawyers.com | D 253.289.5136
Attorneys for Plaintiff Robert Kinnune

Pl.'s Motion to Limit Expert – 11
No. 2:23-cv-00026-MKD

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

## CERTIFICATE OF SERVICE

I certify that on September 28, 2023, in Tacoma, Washington, I caused the attached **Plaintiff's Motion to Limit Testimony of Defense Economist Erick West**, along with the Declaration of Robert Kinnune in Support of **Plaintiff's Motion to Limit Testimony of Defense Economist Erick West**, and the **Declaration of Eric D. Gilman in Support of Plaintiff's Motion to Limit Testimony of Defense Economist Erick West** to be served as follows:

| | |
|---|---|
| Taylor M. Hennessey<br>Assistant Attorney General<br>1116 West Riverside Avenue, Ste. 100<br>Spokane, WA 99201<br>taylor.hennessey@atg.wa.gov<br>jennifer.kleven@atg.wa.gov<br>nikki.gamon@atg.wa.gov<br>rosie.thompson@atg.wa.gov<br>torspoef@atg.wa.gov<br>Attorneys for Defendants State of Washington, Washington State Department of Social and Health Services | Via:<br>☐ Messenger<br>☐ First Class U.S. Mail<br>☒ Electronic CM/ECF Notification<br>☒ Email per e-service agreement<br>☐ _____ |

/s/ Alexis Baltazar
Alexis Baltazar, Paralegal
BECK CHASE GILMAN PLLC

Pl.'s Mot. to Limit Expert –
Certificate of Service
No. 2:23-cv-00026-MKD



BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104