THE HON. MARY K. DIMKE

Beck Chase Gilman PLLC
705 S. Ninth Street, Suite 305
Tacoma, WA 98405
253.289.5104

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT THEODORE KINNUNE, | No. 2:23-cv-00026-MKD |
| Plaintiff, | **Plaintiff's Statement of Material Facts Not in Dispute** |
| Vs. | |
| STATE OF WASHINGTON, WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Defendants. | |

Per LCivR 56, Plaintiff Robert Kinnune identifies the material facts below that are not dispute. Unless otherwise stated, all exhibits cited herein are included in the contemporaneously filed Declaration of Eric D. Gilman in Support of Plaintiff's Motion for Partial Summary Judgment.

1.    Kinnune was a member of the United States Army Reserve. Ex. 35 at 3.

2.    Defendant Washington State Department of Social and Health Services ("DSHS") owns and operates Eastern State Hospital ("ESH"). ECF No. 6-1 at 2, ¶ 1.4.

3.    DSHS hired Kinnune as the full-time Chaplain at ESH, effective May 2, 2016. ECF No. 2-2 at 2, ¶ 3.2; ECF No. 6-1 at 2, ¶ 3.2.

4.      Kinnune had his own private office. Ex. 5 (Ross Dep. at 166:16–18).

5.      Employment positions within DSHS have "Position Description Forms" or "PDFs" that describe the work and functions of each position for both the employee and his supervisor. Ex. 10 (Carlson Dep. at 29:17–20).

6.      The Position Description Form for the Chaplain position that Kinnune held at ESH was officially approved on December 3, 2014 and provides for the lowest level of supervision—described as "Little, employee responsible for devising own work methods." Ex. 13.

7.      Shortly after DSHS hired Kinnune, his direct supervisor, Barbara "Joey" Frost submitted a form requesting that Kinnune receive a higher salary "based on his depth of experience and the talent, confidence, competence & calmness he brings to his role @ ESH . . . ." Ex. 14.

8.      DSHS authorized Kinnune to bring on a part-time chaplain to assist Kinnune, and he recruited Robert Hill to for the position. Ex. 1 (Frost 30(b)(6) at 73:17-18); Ex. 11 (Hill Dep. at 14:4–5).

9.      In 2016 DSHS hired Hill as an on-Call Chaplain to support Kinnune. Ex. 1 (Frost 30(b)(6) at 73:17-18); Ex. 15.

10.     Kinnune's first Performance Evaluation, conducted by Frost, was positive, noting, among other things, that "[e]very idea, program, etc. that Robert is involved in is of the utmost quality" and that Kinnune "is the epitome of symbolizing respect in his interactions with patients, visitors, and colleagues." Ex. 16; Ex. 1 (Frost 30(b)(6) at 22:5–23:2).

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

11.    In the August 2017 ESH Newsletter, Frost praised Kinnune as "a charismatic, engaging, and determined chaplain, who in a very short period of time has reestablished and redirected the purpose of the chaplaincy department to better align with the mission of the hospital—'Transforming Lives.'" Ex. 17; Ex. 1 (Frost 30(b)(6) at 23:17–24:4).

12.    In November 2017, Kinnune received a positive Performance Evaluation from Frost stating, among other things, that Kinnune had "elevated ESH Spiritual Care Services to a level of excellence not available previously" and his "presence, dedication, knowledge and world experience is the reasons that ESH Spiritual Care Services is highly regarded and well respected by patients, employees and community members[.]" Ex. 18; Ex. 1 (Frost 30(b)(6) at 24:17–22).

13.    Kinnune was the leader of the ESH Ethics Committee. Ex. 1 (Frost 30(b)(6) at 197:2–5).

14.    Kinnune was the founder and leader of ESH's Critical Incident Stress Management Team ("CISM"). Ex. 1 (Frost 30(b)(6) at 186:11–187:7).

15.    Kinnune created a chaplaincy/theology internship program at ESH, soliciting Gonzaga University and Whitworth University to place chaplaincy/theology student interns at ESH under Kinnune's "guidance and direction." Ex. 18 at 3.

16.    April Ross was one of the interns that Kinnune supervised. Ross Dep. at 18:6–9.

17.    Ross's internship at ESH was originally scheduled to last one semester, but she extended it several times for a period of approximately 15 months since the

PL.'S STMT. OF MATERIAL FACTS NOT IN DISPUTE – 3 of 20
No. 2:23-cv-00026-MKD

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

experience was so positive and beneficial for her. Ex. 5 (Ross Dep. at 18:6–14, 21:20–24).

18.    On June 20, 2018, the Department of the Army ordered Kinnune to report for active duty on July 23, 2018. Ex. 19 at 3.

19.    Kinnune communicated his military orders to his supervisor Joey Frost, ESH's then-CEO Mark Kettner, ESH's then-COO Ronda Kenney, DSHS's then-Human Resources Business Partner Amy Jo Carlson, and others on June 21, 2018. Ex. 19 at 3.

20.    Kinnune used ESH vacation time after receiving the June 20, 2018 Army orders, until he deployed. Ex. 19 at 1; Ex. 20.

21.    Kinnune's initial period of active duty was for 365 days, with a scheduled end date of July 22, 2019. Ex. 19 at 3.

22.    Prior to being called up for active military service in 2018, Kinnune received uniformly positive annual Performance Evaluations. Ex. 1 (Frost 30(b)(6) at 22:25–23:2; 24:20–22; 25:12–16).

23.    Prior to being called up for active military service in 2018, Kinnune never had any disciplinary action, complaint against him, or documented conduct or performance issues at ESH. Ex. 1 (Frost 30(b)(6) at 25:17–21; 32:25–33:7).

24.    No ESH patient has ever complained about Kinnune not meeting his or her spiritual care service needs. Ex. 1 (Frost 30(b)(6) at 53:5–13).

25.    DSHS hired Kinnune's former intern, April Ross, to be the interim Chaplain while Kinnune was on military service leave. Ex. 1 (Frost 30(b)(6) at 134:17–21); Ex. 9 (Kenney Dep. at 29:1–5).

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

26.    While Kinnune was on military service leave, he emailed occasional updates to a number of DSHS employees from his personal email address. Exs. 55, 56, and 57.

27.    Frost responded to one such personal email from Kinnune on August 18, 2018, writing, in part: "Keep in touch." Ex. 55.

28.    On September 6, 2018, Kinnune emailed Frost about a text message he received from Ross that concerned him because Ross wrote that the Chaplaincy "will come back to [Kinnune] in whatever shape that is[.]" Ex. 21.

29.    Frost called Ross into a meeting in September 2018 to discuss the fact that Kinnune had raised concerns about Ross. Ex. 5 (Ross Dep. at 153:8–15).

30.    Sometime between September and December 2018, Frost asked Ross to prepare a written summary of Ross's grievances with Kinnune. Ex. 1 (Frost 30(b)(6) at 101:2–9).

31.    Frost asked Ross to prepare the written summary of Ross's issues with Kinnune in preparation for a meeting with then-CEO Kettner and then-COO Kenney in January 2019, during which Ross was to communicate her complaints about Kinnune. Ex. 5 (Ross Dep. at 143:5–144:6); Ex. 1 (Frost 30(b)(6) at 105:24–106:6).

32.    The written narrative that Ross prepared for the January 2019 meeting was six pages and included multiple allegations against Kinnune, including that he may have had sexual intercourse with an ESH patient; fondled an ESH patient's breasts; engaged in "bullying";  espoused misogynistic views about the role of

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

women; espoused discriminatory views about LGBTQ+ individuals, and discriminated based on religion. Ex. 22.

33.    Ross read her six-page narrative aloud at the January 2019 meeting and provided a copy. Ex. 5 (Ross Dep. at 144:17–23); Ex. 1 (Frost 30(b)(6) at 107:3–15).

34.    The attendees at the January 2019 meeting included then-CEO Kettner, then-COO Kenney, then-Human Resources Business Partner Carlson, then-Director of Organizational Development and Communications Frost, and interim Chaplain Ross. Ex. 5 (Ross Dep. at 144:17–23, 145:12–13, 153:16–25).

35.    It is rape in the second degree in violation of RCW 9A.44.050 for an ESH employee to have sexual intercourse with an ESH patient. Ex. 7 (Kettner Dep. at 24:15–24:10); Ex. 9 (Kenney Dep. at 39:15–18).

36.    DSHS trains everyone it employs at ESH that each employee is a "mandatory reporter" of potential abuse of vulnerable adults, and every patient at ESH is necessarily a vulnerable adult. Ex. 10 (Carlson Dep. 53:8–18); Ex. 9 (Kenney Dep. at 38:13–39:14); Ex. 7 (Kettner Dep. at 22:5–23:17).

37.    If DSHS employees learn of an allegation that an employee had fondled the breasts of an ESH patient, that triggers an obligation for the DSHS employees to communicate the allegation to law enforcement. Ex. 10 (Carlson Dep. at 53:19–25).

38.    If DSHS employees learn of an allegation that an ESH employee had sexual intercourse with a current or former patient, that is something that DSHS employees are required to report to law enforcement under the mandatory reporter laws applicable to state mental institutions. Ex. 9 (Kenney Dep. at 39:19–24).

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

39.    Following the January 2019 meeting, no one within DSHS, including the attendees at the meeting, made a report to law enforcement regarding the allegations made by Ross. Ex. 1 (Frost 30(b)(6) at 116:3–9); Ex. 10 (Carlson Dep. at 65:3-17); Gilman Decl. at ¶4.

40.    DSHS Administrative Policy No. 18.66 prohibits, among other things, discrimination, sexual harassment, other forms of harassment, and inappropriate behaviors. Ex. 23.

41.    If a DSHS employee learns of a potential violation of Policy No. 18.66, he or she is required to report the potential violation which, in turn, triggers a mandatory investigation the complies with DSHS Administrative Policy No. 18.89. Ex. 3 (Marsik 30(b)(6) at 32:9–33:13); *see* Ex. 24.

42.    Ross's six-page narrative, which she read aloud at the January 2019 meeting, contains allegations of potential violations of Policy No. 18.66 by Kinnune. Ex. 7 (Kettner Dep. at 56:10–24); Ex. 9 (Kenney Dep. at 42:12–44:01); Ex. 10 (Carlson Dep. at 58:11–15, 65:3–13).

43.    A DSHS employee who is alleged to have potentially violated Policy No. 18.66 must receive, among other things, notice and an opportunity to speak in his own defense. Ex. 10 (Carlson Dep. at 18:13–23); Ex. 1 (Frost 30(b)(6) at 37:23–38:18, 116:19–117:7); Ex. 9 (Kenney 18:07–19:1); Ex. 7 (Kettner Dep. at 20:6–19).

44.    On April 8, 2019, the Department of the Army amended Kinnune's orders, extending his tour length from 365 to 709 days, with a scheduled end date of June 30, 2020. Ex. 25.

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

45.     Kinnune sent DSHS a copy of the Army's April 8, 2019 amended orders and a copy of the same was received in the payroll department on June 5, 2019. Ex. 25.

46.     The Washington legislature passed a law that required all state employed Chaplains be renamed Religious Coordinators, beginning in 2019.[1] Exs. 61, 62.

47.     The legislation changing the job title from "Chaplain" to "Religious Coordinator" did not require DSHS to update or establish new Position Description Forms because that change was updated automatically by the State Office of Financial Management's Director of State Human Resources. Ex. 8 (Hammer Dep. at 21:8–14); Exs. 61, 62.

48.     In the months approaching Kinnune's scheduled return from military service, Hill attended meetings of the Spiritual Care Services department and observed Frost and Ross discussing their desire not to bring Kinnune back to his position as the Chaplain, and he observed Frost express frustration about having to reemploy Kinnune following his military service. Ex. 11 (Hill Dep. at 58:13–15, 59:9–16); ECF No. 2-2 at 30–31.

49.     Frost instructed Hill not to communicate with Kinnune about what had been discussed about Kinnune during Spiritual Care Services department meetings. Ex. 11 (Hill Dep. 51:9–52:22, 82:4–13).

---

[1] The Parties and witnesses in this case refer to "Chaplain" and "Religious Coordinator" interchangeably.

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

50.    On May 5, 2020, the Department of the Army amended Kinnune's orders, extending his tour length from 709 days to 769 days, with a scheduled end date of August 29, 2020. Ex. 28.

51.    On May 12, 2020, Kinnune forwarded the Army's May 5, 2020 amended orders to Carlson, Kettner, Frost, and Kenney, along with an email explaining his intent to return to work at ESH on August 31, 2020. Ex. 28.

52.    Kinnune properly notified DSHS about all his military orders that would result in military-service-related absence, in compliance with USERRA. Ex. 2 (Gulick 30(b)(6) at 26:4–6, 18–21).

53.    As a government agency using public funds, DSHS needed hard data showing the number of requests being made for spiritual care services, the services being provided, and any unmet requests for spiritual care services to support doubling the number of full-time Religious Coordinators. Ex. 1 (Frost 30(b)(6) at 81:01–11); Ex. 26; Ex. 7 (Kettner Dep. at 11:14–23, 29:9–16, 29:24–30:4).

54.    During the entire time that Kinnune was on military service leave, ESH maintained a Spiritual Care Services Monthly Report that showed how many patients requested services, in order to justify staffing needs within the Spiritual Care Services department. Ex. 1 (Frost 30(b)(6) at 27:9–15); Ex. 27.

55.    Nothing in the Spiritual Care Services Monthly Reports maintained at ESH reflects unmet patient needs. Ex. 1 (Frost 30(b)(6) at 87:16–18).

56.    Nothing in the in the Spiritual Care Services Monthly Reports maintained at ESH reflects any trend showing an increased need for spiritual care services at ESH. Ex. 1 (Frost 30(b)(6) at 90:20–24); Ex. 5 (Ross Dep. at 106:16–22).

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

57.    Western State Hospital is ESH's "sister hospital," has approximately two-and-a-half times as many beds and three times the employees as ESH, and has employed between one and two full-time chaplains since 2016. Ex. 1 (Frost 30(b)(6) at 58:11–22, 59:10–18); Ex. 66.

58.    From at least 1989 until Kinnune's return from military service in 2020, ESH always employed just one full-time Chaplain. Ex. 9 (Kenney Dep. at 8:22–9:9).

59.    On May 15, 2020, Carlson sent paperwork to the Class and Compensation department seeking approval to establish a new full-time Religious Coordinator position, which would cover Kinnune's position. Ex. 29.

60.    Carlson's May 15, 2020 email included a proposed Position Description Form for the new Religious Coordinator position, which would cover Kinnune's position, created by Carlson and Frost, and signed May 7, 2020. Ex. 29.

61.    Among the changes to the new Position Description Form created by Carlson and Frost was an increase in the level of supervision from the lowest level ("Little, employee responsible for devising own work methods") to the highest ("Close, detailed"). *Compare* Ex. 13 at 07010117 *with* Ex. 29 at 0701-2787.

62.    On May 21, 2020, Carlson and Frost received an email from the Class and Compensation department advising that the request to create a new Religious Coordinator position would not be processed due to a hiring freeze. Ex. 30.

63.    The Position Description Form created by Carlson and Frost and signed on May 7, 2020 was never approved as required by DSHS's policies and procedures. Exs. 30, 49, 10 (Carlson Dep. at 28:23–29:03).

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

64.    It is improper and highly inappropriate to present an unapproved Position Description Form to an employee for signature. Ex. 1 (Frost 30(b)(6) at 139:10–13); Ex. 9 (Kenney Dep. at 85:11–16); Ex. 9 (Carlson Dep. at 29:4–8).

65.    On June 17, 2020, DSHS summarily terminated its on-call relationship with Chaplain Hill, against Hill's wishes. Ex. 31; Ex. 1 (Frost 30(b)(6) at 70:22–71:7); Ex. 11 (Hill Dep. at 73:19–22).

66.    Hill was not terminated for performance or disciplinary issues. Ex. 11 (Hill Dep. at 74:24–75:04); *see* Ex. 1 (Frost 30(b)(6) at 68:1–71:12, 74:22–76:11, 85:1–86:1, 164:12–165:12, 166:8–186.)

67.    Hill's on-call relationship with DSHS meant that he would only be paid for the hours he was called in to assist; it would not have cost DSHS anything to maintain the on-call relationship with Hill if it did not call him in to assist. Ex. 1 (Frost 30(b)(6) at 72:19–73:01).

68.    In mid-June 2020, Frost and Ross worked to reconstitute the CISM team—which had been disbanded in approximately March 2019—under some unarticulated time constraint. Ex. 1 (Frost 30(b)(6) at 193:01–10, 200:18–201:7, 207:23–208:1). Ex. 32.

69.    On June 22, 2020, Frost announced the members of the newly reconstituted CISM team. Ex. 33.

70.    Ross was appointed to be the leader of the newly reconstituted CISM team. Ex. 1 (Frost 30(b)(6) at 187:15–19, 207:23–208:1); Ex. 9 (Kenney Dep. at 83:22–84:2).

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

71.     On June 26, 2020, Kinnune emailed Carlson, Frost, Kenney, and Kettner to provide an update on his plans to return to work at ESH, and to offer to provide his DD214 Honorable Discharge from Active Duty papers. Exs. 34.

72.     Kinnune satisfied his obligations under USERRA to reapply for his job. Ex. 2 (Gulick 30(b)(6) at 31:2–6, 15–18).

73.     On June 28, 2020, Kinnune faxed his DD214 to Kettner, Frost, and Kenney. Ex. 35.

74.     On June 30, 2020, Frost emailed a meeting invitation with the subject "Robert Kinnune" to Carlson and Kenney, setting a meeting for July 9, 2020. Ex. 36.

75.     On the same "Robert Kinnune" email thread, Frost explains that "[t]his is a short meeting to discuss our plan." Ex. 36.

76.     On the same "Robert Kinnune" email thread, to which then-CEO Kettner was added, Frost reports that she had a conference with her two subordinates, Ross and Susan Bordges, on July 21, 2022, "to ensure they have completed their piece." Ex. 36.

77.     Carlson and Kenney have both testified that they have no recollection of the July 2020 meetings, "the plan" for Kinnune that was discussed at that time, or what Ross and Bordges's "piece" of that plan was. Ex. 10 (Carlson Dep. at 43:13–44:3); Ex. 9 (Kenney Dep. at 34:15-20, 40:8–15).

78.     On July 17, 2020, Bordges emailed Frost a document that Bordges had prepared, outlining criticisms of Kinnune. Exhibit 37.

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

79.     Bordges testified that she does not recall why she prepared a document with criticisms of Kinnune for Frost. Bordges at 41:8–17, 42:8–12, 42:24–43:2, 43:22–44:11, 62:22–63:2–11).

80.     Bordges also sent other emails about criticisms of Kinnune on July 16, 22, and 29, 2020. Ex. 38.

81.     On July 26, 2020, Ross sent Frost an email that says "here is the document you requested," and attached the six-page narrative that Ross had read to ESH administrators back in January 2019. Ex. 39.

82.     Frost testified that she does not recall why she asked Ross to email the six-page narrative in July 2020, (Ex. 1 (Frost 30(b)(6) at 113:22–114:12)), though she also testified that any action related to Ross's six-page narrative should only be handled by Human Resources (*Id.* at 108:13–109:6, 110:19–25).

83.     DSHS created a calendar event with a start date of August 12, 2020, titled "review Kinnune report," that contemplates a "[r]eview of all documents submitted by Joey Frost" related to "Robert Kinnune's actions while serving as the perm chaplain prior to his military leave that began in 2018," and notes that Kinnune "is returning to ESH on September 1, 2020." Ex. 40.

84.     Frost testified that she unilaterally asked Ross to email her the six-page narrative in July 2020, without consulting with HR, and says she never passed the document along to anyone. Ex. 1 (Frost 30(b)(6) at 122:25–123:19).

85.     Kinnune was never told about the July 2020 meetings about him and was not given an opportunity to respond to the allegations made against him in July

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

2020, as he only learned about these events through discovery in this case. Ex. 1 (Frost 30(b)(6) at 121:14–122:13).

86.     Frost scheduled a meeting between her, Kenney, and Kinnune at noon on Friday, August 28, 2020, to discuss Kinnune's return to work on August 31, 2020. Ex. 41.

87.     On the morning of August 28, 2020, Frost, Carlson, and Kenney were creating and editing a document titled "Spiritual Care Services Work Instructions/Expectations," which was completed less than an hour before the meeting between Frost, Kenney, and Kinnune. Ex. 42.

88.     During the August 28, 2020 meeting, Frost informed Kinnune that Ross would be staying on as full-time Religious Coordinator and that Kinnune would be sharing his duties with her. Ex. 1 (Frost 30(b)(6) at 125:19–23).

89.     During the August 28, 2020 meeting, Frost gave Kinnune both the new Religious Coordinator Position Description Form and the "Spiritual Care Services Work Instructions/Expectations" document and told him he had to sign both. Ex. 1 (Frost 30(b)(6) at 124:25–125:9, 159:6–17); Ex. 45 at 2.

90.     Frost never informed Kinnune that the Religious Coordinator Position Description Form that told Kinnune to sign at the August 28, 2020 meeting had never been approved in accordance with DSHS policy and procedure. Ex. 1 (Frost 30(b)(6) at 153:18–22); Ex. 9 (Kenney Dep. at 84:14–85:6); Ex. 54.

91.     When Kinnune returned from military service leave in 2020, he was subject to a greater level of supervision and scrutiny by his supervisor, Frost, than he

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

had been before he left for military service in 2018. Ex. 1 (Frost 30(b)(6) at 133:11–16).

92.    The plan was for Kinnune to share office space with Ross. Ex. 1 (Frost 30(b)(6) at 220:8–11).

93.    At 3:22 P.M. on August 28, 2020, Ross circulated a new charter for the Ethics Committee to vote on but did not include Kinnune on the email. Ex. 43; Ex. 1 (Frost 30(b)(6) at 202:16–204:16).

94.    The Ethics Committee needed a new charter in 2020 because it had been disbanded in March 2019 and was being reconstituted shortly before Kinnune returned from military service. Ex. 1 (Frost 30(b)(6) at 202:9–12, 208:2–7); Ex. 44.

95.    The CISM team was disbanded or dissolved in or before March 2019. Ex. 1 (Frost 30(b)(6) at 200:14–201:7).

96.    By failing to return Kinnune to his leadership positions on the Ethics Committee and the CISM team, DSHS did not return Kinnune to the same job. Ex. 9 (Kenney Dep. at 85:17–86:12 ("if we removed two of the job functions from what he did when he was previously there, then he did not return to the same job, even though it was the same rate of pay and the essential functions were the same.").

97.    On Sunday, August 30, 2020, Kinnune sent an email to Frost and Kenney that included a link to information about USERRA and the following excerpt from the Department of Justice's materials:

> USERRA entitles servicemembers to return to their civilian employment upon completion of their military service with the seniority, status, and rate of pay that they would have obtained had they remained continuously employed by their civilian employer. USERRA also

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

prohibits discrimination based on present, past and future
military service.

Ex. 41.

98.    On September 1, 2020, Frost wrote up Kinnune for multiple alleged transgressions using a DSHS "Communication Records" form, citing Kinnune for (a) remaining on the clock for 2.40 hours when he was "only scheduled/approved for 1 hour"; (b) obtaining his office key from security and looking at the office (that he would be sharing with Ross) "without [Frost's] knowledge"; and (c) entering a unisex bathroom "while it was in use by a female co-worker." Ex. 45.

99.    Religious Coordinator is an overtime exempt position and receives the same compensation whether the employee is clocked in for one hour or sixty hours. Ex. 5 (Ross Dep. at 75:25–76:08).

100.    Kinnune disputes that there was any issue with him visiting, on Friday August 28, 2020, the office that he was to share with Ross starting Monday, August 31, 2020. Ex. 45 at 1.

101.    The lock on the door of the unisex bathroom that Kinnune entered— while a female co-worker was brushing her teeth—had been broken since at least February 2020, resulting in multiple staff people being walked in on. Ex. 46; Ex. 12 (Kinnune Dep. at 86:1–21).

102.    On September 2, 2020, Kinnune contacted Carlson about his USERRA rights and provided Carlson with a 97-page Department of Justice guide titled "Employment Rights of the National Guard and Reserve." Ex. 47.

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

103.    According to DSHS policy and testimony, Kinnune's September 2, 2020 communication with Carlson about his USERRA rights was protected activity for which he could not be retaliated against. Ex. 10 (Carlson Dep. at 79:20–80:6).

104.    Kinnune received multiple written complaints and criticisms from Frost and Ross in the days after returned from military service leave. Ex. 48 (Answers to Interrogatory No. 5).

105.    After going through every complaint about Kinnune's behavior or performance that DSHS identified in discovery, Rule 30(b)(6) designee Frost conceded that every single written criticism of Kinnune's performance was created after Kinnune went on military service leave in 2018. Ex. 1 (Frost 30(b)(6) at 228:19–22).

106.    In response to COVID-19, employees at ESH were assigned to perform temperature checks and screenings at designated entry points. Ex. 5 (Ross Dep. at 56:22–57:10).

107.    Upon returning from military service, Kinnune was scheduled for 12 COVID-19 screening shifts during a two-week period from September 14–27, 2020; Ross was not scheduled for any COVID-19 screening shifts in September 2020. Ex. Ex. 49.

108.    Ross had only been scheduled for 26 COVID-19 screening shifts during the six-month period from March 30 to October 11, 2020, on average, less than one shift per week. Ex. 49.

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

109.    On September 24, 2020, Kinnune reported to Human Resources that he was experiencing a hostile work environment and unprofessional conduct by Frost and Ross. Ex. 51.

110.    According to DSHS policy and testimony, Kinnune's report to Human Resources that he was experiencing a hostile work environment, created by Frost and Ross, following his military service leave was protected activity for which he could not be retaliated against. Ex. 10 (Carlson Dep. at 80:15–23).

111.    Matt McCord, the investigator assigned to investigate Kinnune's complaint against Frost and Ross interviewed Kinnune, Hill, and Bordges and received conflicting information. Ex. 53; Ex. 59.

112.    DSHS stopped the investigation into Kinnune's complaint without the investigator interviewing the subjects of the investigation, Frost and Ross. Ex. 59 at 6 ("I didn't speak with Frost, Ross (potential subjects)").

113.    When McCord interviewed Bordges as part of his "Fact Finding" inquiry into Kinnune's hostile work environment report, Bordges never told McCord that just months prior, in July 2020, she sent multiple emails to Frost, at Frost's request, that contained various criticisms of Kinnune. Ex. 38.

114.    No one within DSHS informed McCord about the July 2020 emails or meetings about "the plan" for Kinnune, or the various emails and documents compiled by Frost, Ross, and Bordges critical of Kinnune. Ex. 59.

115.    Based on the inaccurate or incomplete information that DSHS provided to McCord, he was unable to substantiate any of Kinnune's claims. Ex. 59 at 6.

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

116.    On September 23, 2020, Kinnune requested Government Service Leave to go work with the Spokane County Sheriff Department and was granted leave for 12 months. Ex. 50; Ex. 52.

117.    On December 13, 2020, Kinnune sent a holiday greeting email from his personal email to a group of DSHS employees, just as he had done multiple times while he was on military service leave. Ex. 58.

118.    On December 14, 2020, Frost responded to Kinnune's December 13 email, directing him not to send personal emails to an ESH distribution list while he was on leave. Ex. 58.

119.    Kinnune responded, copying others, and reported that Frost's email appeared to be another act of reprisal related to his HR complaint and his USERRA rights. Ex. 58.

120.    In April or May 2021, while Kinnune was still on Governmental Service Leave, Carlson or Kettner asked Kenney to look into whether Kinnune had somehow been dishonest in requesting Government Service Leave. Ex. 9 (Kenney Dep. at 78:14–16) 80:12.

121.    On May 5, 2021, while Kinnune was still on Governmental Service Leave, DSHS sent Kinnune an "official notification," signed by the CEO, that he was being investigated for concerns that he "misrepresented [his] leave of absence." Ex. 62; Ex. 7 (Kettner Dep. at 59:2–7).

122.    After the investigation into Kinnune was initiated, DSHS realized that "Robert Kinnune was approved for and donated shared leave in error" in relation to

Beck Chase Gilman PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104

his Government Service Leave, and in any event, Kinnune "did not utilize any shared leave." Ex. 63.

123.    The issue for which Kinnune was investigated in 2021 concerns administrative categorization of an employee and is not the type of issue that typically results in a notice of investigation. Ex. 9 (Kenney Dep. at 80:18–81:12).

124.    Regarding DSHS's 2021 investigation into Kinnune, former COO Ronda Kenney concedes "[t]hat we [were] trying to find something else on him." Ex. 9 (Kenney Dep. at 81:13–16).

125.    By letter dated September 23, 2021, Kinnune communicated through counsel to Kettner that Kinnune could not return to ESH as the hospital had not taken action to remedy the violations of state and federal law reported by Kinnune. Ex. 64.

126.    After Kinnune's employment at ESH officially ended, the Position Description Form for the Religious Coordinator position was amended to the level of supervisory oversight back to the lowest level, as it was before Kinnune left for military service in 2018. Ex. 65.

Respectfully submitted November 7, 2023.

BECK CHASE GILMAN PLLC

By: _____
James W. Beck, WSBA No. 34208
james@bcglawyers.com | D 253.289.5122
Eric D. Gilman, WSBA No. 41680
eric@bcglawyers.com | D 253.289.5108
Janelle E. Chase Fazio, WSBA No. 51254
janelle@bcglawyers.com | D 253.289.5136
Attorneys for Plaintiff Robert Kinnune

1

## CERTIFICATE OF SERVICE

2

3    I certify that on November 7, 2023 in Tacoma, Washington, I caused the

4    attached **Plaintiff's Statement of Material Facts Not in Dispute** to be served as

5    follows:

6

| Taylor M. Hennessey<br>Assistant Attorney General<br>1116 West Riverside Avenue, Ste. 100<br>Spokane, WA 99201<br>taylor.hennessey@atg.wa.gov<br>jennifer.kleven@atg.wa.gov<br>rosie.thompson@atg.wa.gov<br>torspoef@atg.wa.gov<br>Attorneys for Defendants State of<br>Washington, Washington State<br>Department of Social and Health<br>Services | Via:<br>☐ Messenger<br>☐ First Class U.S. Mail<br>☒ Electronic CM/ECF<br>   Notification<br>☒ Email per e-service agreement<br>☐ _____ |
|---|---|

7

8

9

10

11

12

13

14

15                                  /s/ Alexis Baltazar
                                    Alexis Baltazar, Paralegal
16                                  BECK CHASE GILMAN PLLC

17

18

19

20

21

22

23

24  PL.'S STMT. OF MATERIAL FACTS NOT IN
    DISPUTE – 21
    Certificate of Service
    No. 2:23-cv-00026-MKD

BECK CHASE GILMAN PLLC
705 S. Ninth St., Suite 305
Tacoma, WA 98405
253.289.5104