FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 26, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT THEODORE KINNUNE,<br><br>                              Plaintiff,<br><br>        v.<br><br>STATE OF WASHINGTON; and WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>                              Defendants. | No. 2:23-CV-00026-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>AND<br><br>DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 38, 43** |

Before the Court are Plaintiff Robert Theodore Kinnune's Motion for Partial Summary Judgment, ECF No. 38, and Defendants Washington State and Washington State Department of Social and Health Services' (collectively "DSHS") Motion for Summary Judgment, ECF No. 43. On January 19, 2024, the Court held a hearing on the motions. ECF No. 65. Eric Gilman and James Beck

ORDER - 1

appeared on behalf of Mr. Kinnune.  Taylor Hennessey appeared on behalf of

DSHS.

Mr. Kinnune alleges that DSHS discriminated against him, retaliated against

him, and failed to rehire him, in violation of the Uniformed Services Employment

and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*, and the

Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.*  ECF

No. 2-2.  Mr. Kinnune moves for summary judgment on his USERRA failure-to-

reemploy claim, and on certain elements of his discrimination and retaliation

claims.  ECF No. 38.  DSHS moves for summary judgment on Mr. Kinnune's

failure-to-reemploy claim, and on certain elements of Mr. Kinnune's

discrimination and retaliation claims.  ECF No. 43.

For the reasons stated at the hearing and set forth below, Mr. Kinnune's

Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in

part.**  DSHS's Motion for Summary Judgment is **DENIED.**

## BACKGROUND

The following factual background is undisputed.  Mr. Kinnune is a member

of the United States Army Reserve.  ECF No. 57 at 1 ¶ 1.  On May 2, 2016, DSHS

hired Mr. Kinnune as full-time Chaplain at Eastern State Hospital ("ESH").  ECF

No. 57 at 1 ¶ 3.

ORDER - 2

On June 20, 2018, the Department of the Army ordered Mr. Kinnune to report for active duty, beginning July 23, 2018, and ending July 22, 2019.  ECF No. 57 at 4 ¶¶ 18-21.  Mr. Kinnune informed his supervisors at ESH on June 21, 2018.  ECF No. 57 at 4 ¶ 19.  Prior to being called to active duty, Mr. Kinnune had no disciplinary actions, complaints, or documented performance issues recorded against him.  ECF No. 57 at 4 ¶ 23.

While Mr. Kinnune was on military leave, DSHS hired April Ross, an intern that worked under Mr. Kinnune, as interim chaplain.  ECF No. 57 at 4 ¶ 25.  During Mr. Kinnune's military leave in January 2019, Ms. Ross wrote a six-page complaint against Mr. Kinnune that include allegations of sexual misconduct with patients, bullying, misogyny, and discrimination against LGBTQ+ individuals.  ECF No. 57 at 5-6 ¶¶ 32.

On April 8, 2019, the Army extended Mr. Kinnune's tour to June 30, 2020.  ECF No. 57 at 7 ¶ 44.  Mr. Kinnune informed DSHS on June 5, 2019.  ECF No. 57 at 7 ¶ 45.  On May 5, 2020, the Army extended Mr. Kinnune's tour to August 29, 2020.  ECF No. 57 at 8 ¶ 50.  Mr. Kinnune informed DSHS on May 12, 2020.  ECF No. 57 at 8 ¶ 51.

On June 26, 2020, Mr. Kinnune reapplied for his job.  ECF No. 57 at 10 ¶¶ 71-72.  In anticipation of Mr. Kinnune's return, DSHS employees held a number of meetings and collected documents.  ECF No. 57 at 10-11 ¶¶ 74-86.

ORDER - 3

On August 28, 2020, DSHS managers and employees scheduled a meeting with Mr. Kinnune to discuss the terms of his return. ECF No. 38-1 at 14 ¶ 86; ECF No. 49 at 12 ¶ 86. On September 1, 2020, Mr. Kinnune returned to ESH full-time. ECF No. 44 at 5 ¶ 23; ECF No. 59 at 5 ¶ 23.

Following his return, Mr. Kinnune was dissatisfied with the conditions and circumstances of his employment. ECF No. 44 at 5 ¶ 21; ECF No. 59 at 4-5 ¶ 21; ECF No. 57 at 13 ¶ 97, 14 ¶¶ 102, 109. On September 23, 2020, Mr. Kinnune requested leave to work with the Spokane County Sheriff Department, which DSHS granted. ECF No. 57 at 15 ¶ 116. On September 24, 2020, Mr. Kinnune reported to human resources that he believed he had experienced a hostile work environment at ESH. ECF No. 57 at 14 ¶ 109. On January 26, 2021, ESH sent Mr. Kinnune a letter indicating that DSHS completed an investigation into his claims. ECF No. 44 at 6 ¶ 26; ECF No. 46-2 at 6; ECF No. 59 at 5 ¶ 26.

In December 2020, Mr. Kinnune's supervisor admonished him for sending a holiday email to ESH staff. ECF No. 57 at 15-16 ¶¶ 117-119. In May 2021, DSHS opened an investigation into whether Mr. Kinnune misrepresented his leave of absence. ECF No. 57 at 16 ¶¶ 120-123. DSHS closed the investigation with no adverse findings against Mr. Kinnune. ECF No. 57 at 16 ¶ 122.

On August 16, 2021, ESH sent a letter to Mr. Kinnune directing him to return to ESH on September 30, 2021. ECF No. 39-3 at 166 (referencing an

August 16, 2021 letter); ECF No. 45-12 at 2 (referencing an August 16, 2021

letter).  On September 23, 2021, Mr. Kinnune, through counsel, sent a letter to

DSHS explaining that Mr. Kinnune could not return to ESH, as he believed ESH

violated federal and state laws.  ECF No. 38-1 at 20 ¶ 125; ECF No. 39-3 at 166;

ECF No. 49 at 17 ¶ 125.  On October 1, 2021, DSHS's counsel spoke with

Mr. Kinnune's counsel, who clarified that Mr. Kinnune would resign from ESH.

*See* ECF No. 45-12 at 2.  Mr. Kinnune maintains that his resignation was not

voluntary.  ECF No. 59 at 5-6 ¶ 27.  On October 4, 2021, DSHS told Mr. Kinnune

that his effective last day would be October 5, 2021.  ECF No. 45-12 at 2.

On November 16, 2022, Mr. Kinnune filed a complaint in the Superior Court

of Washington for Thurston County, No. 22-2-03157-34.  ECF No. 1 at 1.  He

alleges violations of (1) the Uniformed Services Employment Reemployment

Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4333, and (2) the

Washington Law Against Discrimination ("WLAD"), RCW 49.60.  ECF No. 2-2.

On January 6, 2023, Defendants removed to this Court.  ECF No. 1.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906

ORDER - 5

(9th Cir. 2019).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

The moving party bears the initial burden of demonstrating the basis for its motion and identifying the portions of the record and the evidence that show the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)).  After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record "specific facts" showing that there is a genuine dispute of material fact for trial.  *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"  *Anderson*, 477 U.S. at 252.  A party may move for summary judgment on part of a claim or defense.  Fed. R. Civ. P. 56(a).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."

ORDER - 6

*Anderson*, 477 U.S. at 255.  "[W]hen parties submit cross-motions for summary

judgment, [e]ach motion must be considered on its own merits," but the court must

consider all evidence before it when separately reviewing the merits of each

motion.  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d

1132, 1136 (9th Cir. 2001) (second alteration in original).

## DISCUSSION

Mr. Kinnune moves for partial summary judgment, asking the Court to

decide as a matter of undisputed fact and law that (1) Mr. Kinnune was entitled to

reemployment under USERRA, (2) DSHS failed to reemploy Mr. Kinnune as

required under USERRA, (3) Mr. Kinnune was entitled to USERRA and WLAD's

anti-discrimination provisions due to his protected status, and (4) Mr. Kinnune was

entitled to USERRA and WLAD's anti-retaliation provision due to his protected

activity.  ECF No. 38.  DSHS moves for summary judgment, arguing that (1)

DSHS met its reemployment obligations under USERRA, and that Mr. Kinnune

cannot establish (2) a hostile work environment, (3) an adverse employment action,

(4) discriminatory motive, or (5) that any alleged USERRA violations were willful.

ECF No. 43.

### A. USERRA Reemployment

Congress enacted USERRA to ease the burden of military service on

servicemembers' civilian careers and employment.  *Belaustegui v. Int'l Longshore*

ORDER - 7

*& Warehouse Union*, 36 F.4th 919, 923 (9th Cir. 2022) (quoting 38 U.S.C. §

4301(a)(1)).  USERRA provides that "any person whose absence from a position

of employment is necessitated by reason of service in the uniformed services shall

be entitled to the reemployment rights and benefits . . . of this chapter[.]"  38

U.S.C. § 4312(a).  The Ninth Circuit has instructed that USERRA is to be

"liberally construed for the benefit of those who left private life to serve their

country in its hour of great need."  *Belausegui*, 36 F.4th at 923 (quoting *Ziober v.*

*BLB Res., Inc.*, 839 F.3d 814, 819 (9th Cir. 2016)) (quotation marks omitted).

    Mr. Kinnune argues that he is entitled to reemployment under USERRA as a

matter of law, and the parties each seek summary judgment on the question of

whether DSHS met its reemployment obligations.  ECF No. 38 at 12-15; ECF No.

43 at 9-12.

### *1.  Mr. Kinnune was Entitled to Reemployment Under USERRA*

#### i.  Mr. Kinnune Meets USERRA Statutory Prerequisites

    USERRA rights are subject to a number of prerequisites:  The

servicemember must "(1) properly notify their employers of the need for a service-

related absence, (2) take cumulative absence of no more than five years[,] and (3)

properly report to work or reapply for employment, depending upon the length of

the absence."  *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007)

(citing 38 U.S.C. § 4312(a)(1)-(3)).

1    DSHS concedes that Mr. Kinnune met the statutory prerequisites and that he

2    is entitled to USERRA reemployment.  ECF No. 38 at 13; ECF No. 48 at 8-9.

3    Moreover, the parties' stipulated facts indicate that Mr. Kinnune is entitled to

4    reemployment under USERRA: Mr. Kinnune communicated his initial deployment

5    orders and extensions to DSHS, his period of service lasted just over two years,

6    and he notified DSHS of his return and reported for work.  ECF No. 57 at 4-13 ¶¶

7    18-97.  There is no factual or legal dispute that Mr. Kinnune met USERRA's

8    statutory prerequisites.

9              ii.  DSHS Has Not Alleged the Statutory Affirmative Defenses to
                   Mr. Kinnune's USERRA Reemployment Claim

10   USERRA provides affirmative defenses that, if established, allow an

11   employer to evade the duty to reemploy a returning servicemember, as follows:

12   (1) the employer's circumstances have so changed as to make reemployment

13   impossible or unreasonable; (2) employment would impose undue hardship (in

14   certain circumstances); or (3) the employment that the servicemember left was for

15   a brief, nonrecurrent period.  38 U.S.C. § 4312(d)(1)(A)-(C); *see also United States*

16   *v. Nevada*, 817 F. Supp. 2d 1230, 1241-42 (D. Nev. 2011) (citing 38 U.S.C.

17   § 4312(d)(1)(A)-(C)).  The burden to prove any of these affirmative defenses is

18   with the employer.  38 U.S.C. § 4312(d)(2); *Nevada*, 817 F. Supp. 2d at 1242.

19   Mr. Kinnune highlights that DSHS did not plead any statutory affirmative

20   defenses to his USERRA reemployment claim.  ECF No. 38 at 13 (citing ECF No.

ORDER - 9

6-1 (Answer)).  DSHS agrees that none of the statutory affirmative defenses listed in 38 U.S.C. § 4312(d)(1)(A)-(C) apply.  ECF No. 48 at 8-10.

Therefore, no disputes of fact preclude a finding that Mr. Kinnune is entitled to USERRA's reemployment provisions as a matter of law.  Mr. Kinnune's motion is granted in part, to the extent that it seeks a judicial determination on that question.

> 2. *Genuine Factual Disputes Preclude Summary Judgment on Whether Mr. Kinnune was Reemployed as Required under USERRA*

USERRA provides that

> . . . an eligible servicemember whose period of service exceeded 90 days is entitled to reemployment "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform."

*Belaustegui*, 36 F.4th at 923-24 (quoting 38 U.S.C. § 4313(a)(2)(A)[1]).  "This position is known as the 'escalator position,'" which is meant to ensure "that a returning service member not be removed from the progress (escalator) of his career trajectory."  *Id.* at 924 (quoting 20 C.F.R. § 1002.191; *Huhmann v. Fed.*

---

[1] USERRA provides other procedures and standards for servicemembers who are not qualified for the position sought upon return or who incurred a disability in military service which are not at issue, here.  *See* 38 U.S.C. § 4313(a)(2)-(4).

1  *Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017)).  The "escalator position" is

2  determined through a "reasonable certainty" test, which asks what position "the

3  returning servicemember 'would have attained with reasonable certainty if not for

4  the absence due to uniformed service.'"  *Id.* (quoting 20 C.F.R. § 1002.191).  The

5  returning servicemember is also "'entitled to the seniority and other rights and

6  benefits determined by seniority' that he or she would have attained but for the

7  period of military service."  *Id.* (quoting 38 U.S.C. § 4316(a)).

8  However, "the statute does not 'freeze' the employee's job as it stood when

9  the employee deployed."  *Mustafa v. Yuma Reg'l Med. Ctr.*, No. CV-21-00161-

10  PHX-ROS, 2023 WL 155856, at *4 (D. Ariz. Jan. 11, 2023).  "Rather, this

11  'escalator provision' contemplates time moving forward in the civilian workplace

12  while the employee undertakes military service and aims to slot the employee back

13  into employment as if he had never left."  *Id.* (citing *Vahey v. Gen. Motors Co.*,

14  985 F. Supp. 2d 51, 60-61 (D.D.C. 2013)); *see also* 20 C.F.R. § 1002.194

15  ("Depending on the circumstances, the escalator principle may cause an employee

16  to be reemployed in a higher or lower position, laid off, or even terminated.").

17  The parties do not dispute that Mr. Kinnune's pay, benefits, field of work,

18  and hospital where he worked remained the same following his return from

19  service.  *See* ECF No. 38 at 13-15; ECF No. 43 at 10-12.  Instead, Mr. Kinnune

20  argues that "DSHS failed to return him to a position of like status."  ECF No. 53 at

2; ECF No. 38 at 15.  More specifically, Mr. Kinnune argues that certain conditions and responsibilities of his employment changed upon his return from service.  ECF No. 38 at 14-15.

DSHS argues that it returned Mr. Kinnune to "the exact same position from which he left."  ECF No. 43 at 12.  DSHS argues that any changes to Mr. Kinnune's position would have occurred as a consequence of natural developments at ESH in his absence, regardless of his military leave.  ECF No. 43 at 11-12.

The parties each move for summary judgment in their favor on the sufficiency of Mr. Kinnune's position at ESH upon his return to work.  ECF No. 38 at 13-15; ECF No. 43 at 10-12.  The Court considers the facts as presented by the parties.

i.  Ethics Committee and CISM Team

It is undisputed that, when Mr. Kinnune left, he was "chair" of the Ethics Committee and "leader" of the CISM Team.  ECF No. 57 at 3 ¶¶ 13-14.  It is also undisputed that when Mr. Kinnune returned, those positions were occupied by Ms. Ross.  *Compare* ECF No. 44 at 4 ¶ 20 *with* ECF No. 59 at 4 ¶ 20; ECF No. 57 at 9-10 ¶ 70.  It is undisputed that the Ethics Committee and the CISM Team were disbanded in March 2019 and later reconstituted, all while Mr. Kinnune was away.  ECF No. 57 at 12-13 ¶¶ 94-95.

ORDER - 12

1    The disparity in Mr. Kinnune's pre- and post-leave positions on the Ethics

2 Committee and CISM Team are likely probative of a change in Mr. Kinnune's

3 "seniority [and] status" before and after his military service. *See Nichols v. Dep't*

4 *of Veterans Affs.*, 11 F.3d 160, 162 n.* (Fed. Cir. 1993) ("Two illustrations of the

5 common meaning of the word 'status' are: A relative position in a ranked group or

6 in a social system . . . [,] and [t]he rights, duties, capacities and incapacities which

7 determine a person to a given class.") (quotations omitted).  However, this fact is

8 insufficient basis to grant summary judgment for two reasons.

9    First, the Court lacks factual context necessary to determine the seniority

10 and status afforded to the "leaders" of the Ethics Committee and CISM team

11 before and after Mr. Kinnune's military service.  It is not clear that these groups

12 were identical, before disbandment and after reconstitution, in anything other than

13 name.  Mr. Kinnune offers little more than a bare assertion that he was denied

14 "leadership positions."  ECF No. 53 at 2.  To conclude that Mr. Kinnune was

15 denied like status upon his return, the Court must understand what the roles

16 entailed, before and after his leave.  For example, in *Nichols*, the Federal Circuit

17 was able to perform a side-by-side comparison of the position that the plaintiff

18 should have had versus the one he was given.  *See* 11 F.3d at 163-64.  Here, the

19 record does not illustrate the day-in and day-out status and responsibilities that

20 came with the leadership positions that Mr. Kinnune claims he was denied.

ORDER - 13

Second, Mr. Kinnune is entitled only to his escalator position, which must be understood in light of the developments at ESH while he was away.  *See Belaustegui*, 36 F.4th at 924; *Mustafa*, 2023 WL 155856, at *4.  Neither party has explained why the groups were disbanded and reconstituted, or why Ms. Ross was appointed to lead them.  Several questions of fact exist concerning the nature of these positions, their importance to Mr. Kinnune's employment, and whether they should be included in Mr. Kinnune's escalator position.

        ii.  Increased Supervision, Different Job Expectations, and Changed Duties

Mr. Kinnune argues that, when he returned, he was "given a new [Position Description Form ("PDF")] that, among other things, significantly increased the level of oversight to which he would be subject from the lowest level of supervision to the highest"; and a new "Work Instructions/Expectations" form that changed the standards of his position.  ECF No. 38 at 15.  He also argues that, when he returned, he was given "menial tasks" that were not part of his role before he left.  ECF No. 38 at 4-5.

These facts may support Mr. Kinnune's claims but, at this stage, fail to establish as a matter of law that Mr. Kinnune was denied reemployment as required under USERRA.  Mr. Kinnune compares his case to *Nichols*.  ECF No. 38 at 14 (citing 11 F.3d at 161-64).  The comparison demonstrates why summary judgment is inappropriate in this case.

ORDER - 14

*Nichols* was an appeal of a Merit Systems Protection Board ("MSPB") decision that Nichols was not denied USERRA reemployment rights. *See* 11 F.3d at 161-64. The Federal Circuit reversed the MSPB decision because Nichols's position upon return lacked the status and seniority that he enjoyed before departing for military service. *Id.* at 163-64. Specifically, in his previous position, Nichols "was the boss, and supervised a number of staff chaplains," but upon his return, "he ha[d] no staff at all to assist with the wide range of responsibilities assigned." *Id.* at 163. The Federal Circuit underscored the lack of guidance Nichols was given in his new position, the fact that the old position still existed but was occupied by a new employee, and the reduction in authority upon his return. *Id.* at 163-64.

Because the position that Nichols left still existed when he returned, but was occupied by another employee, there was little guesswork for the court in comparing his past and present positions. *Id.* at 163-64. Here, the comparison is not as clear. The Court lacks factual context illustrative of the level of supervision, expectations of the job, and the assigned duties that Mr. Kinnune left, for comparison with the job he had upon his return.

The PDFs may serve as evidence that Mr. Kinnune was subject to increased supervision when he returned. *See* ECF No. 39-2 at 45, 157; *see also* ECF No. 39-1 at 62. However, more important is the actual level of supervision imposed on

Mr. Kinnune before and after his military service, and the record lacks sufficient detail supporting summary judgment for either party on that question. *See* ECF No. 48 at 12-13 (disputing that the position description forms did not change the level of supervision to which Mr. Kinnune was subject). Further, it is unclear whether the structural changes at ESH would have resulted in increased supervision of Mr. Kinnune's position, whether or not he left for miliary service. *See* ECF No. 39-1 at 62-63.

As for the "menial duties" that Mr. Kinnune was given upon his return, there is evidence that Mr. Kinnune volunteered for those tasks, though he now contends they were beneath his station. *Compare* ECF No. 62 at 2 *with* ECF No. 53 at 3. The record does not conclusively establish that Mr. Kinnune was denied the opportunity to perform tasks of like seniority and status as those he performed before he left. *See Nichols*, 11 F.3d at 163-64. Such a determination is further clouded by the fact that Mr. Kinnune worked for ESH for just a few weeks before he requested leave to work with the Spokane County Sheriff Department. ECF No. 38-1 at 19 ¶ 116. Whether Mr. Kinnune was "denied" the opportunity to perform tasks akin to those he performed before his military service, or whether he left before he was given that opportunity, is a question of fact.

ORDER - 16

iii. Miscellaneous Incidentals of Employment

Mr. Kinnune argues that DSHS failed to properly reemploy him because the following had changed when he returned: (1) "DSHS . . . fired the on-call chaplain, Hill, who had been hired to support Kinnune"; (2) "Kinnune lost his private office"; and (3) "he went from being ESH's sole full-time Chaplain—a position held by a single person since at least 1989—to being a co-Chaplain with Ross." ECF No. 38 at 15.

Each of these facts is presented without factual context. For example, Mr. Kinnune implies that, by denying him an "on-call chaplain" like Mr. Hill, DSHS denied him an employee under his supervision. ECF No. 38 at 15; ECF No. 53 at 3. The evidence does not indicate that Mr. Hill worked under Mr. Kinnune's direction; rather, it indicates that Mr. Hill was there to cover when Mr. Kinnune was out. ECF No. 39-1 at 33. Mr. Kinnune argues that he lost a "private office," but the evidence indicates that, in his absence, remodeling and restaffing occurred and he may have lost his "private office" even if he never left. ECF No. 39-1 at 116. It may be that ESH had one chaplain from 1989 to Ms. Ross's hiring, but Mr. Kinnune asks the Court to perform the impossible task of deciding, as a matter of undisputed fact, that the hospital's religious and spiritual needs had not changed during his absence. The task is better suited for a fact finder.

None of the incidentals of Mr. Kinnune's job constitute, as a matter of undisputed fact and law, a "benefit of employment" under USERRA, which is statutorily defined as the "terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest . . . that accrues by reason of an employment contract or agreement or employer policy, plan, or practice.'" *Belaustegui*, 36 F.4th at 926 (quoting 38 U.S.C. § 5303(2)). Moreover, whether Mr. Kinnune would have lost these incidentals regardless of his military leave remains in genuine dispute, as his ESH appears to have been fairly dynamic. *See Mustafa*, 2023 WL 155856, at *4 ("the statute does not 'freeze' the employee's job as it stood when the employee deployed").  Mr. Kinnune has failed to demonstrate the lack of a genuine dispute of fact precluding summary judgment in his favor.

### iv. DSHS's Motion for Summary Judgment on USERRA Reemployment

DSHS's motion for summary judgment fails for the same reason as Mr. Kinnune's—several factual disputes exist.  DSHS argues that "[n]one of [Mr. Kinnune's] criticisms are valid," ECF No. 43 at 12, and that "[Mr.] Kinnune was offered the exact same job," ECF No. 48 at 12.

Yet, DSHS admits that Mr. Kinnune was not returned to the same positions on the Ethics Committee and CISM Team.  ECF No. 48 at 12.  DSHS concedes to a factual dispute over whether the PDFs establish that Mr. Kinnune was subjected

ORDER - 18

to increased supervision.  ECF No. 48 at 13-14.  And, regarding changes to the incidentals of Mr. Kinnune's employment, DSHS only argues that it had the authority to make such changes under the employee collective bargaining agreement.  ECF No. 48 at 13.  That DSHS had the contractual authority to make certain changes may indicate that those changes would have been made regardless of Mr. Kinnune's military service.  A contract cannot supersede USERRA.  DSHS could have violated USERRA, even if it had the contractual authority to make changes to Mr. Kinnune's job.

In short, DSHS admits that many issues of fact preclude summary judgment on the question of whether Mr. Kinnune was properly reemployed under USERRA.  The parties' motions for summary judgment on the question of USERRA reemployment are denied.

## B. USERRA and WLAD Discrimination and Retaliation Claims

USERRA prohibits employment discrimination against persons for their "membership, application for membership, performance of service, application for service, or obligation" to a uniformed service.  38 U.S.C. § 4311(a).  Further, USERRA prohibits retaliation against persons for their exercise of USERRA rights.  38 U.S.C. § 4311(b).  The Ninth Circuit applies "a two-part test to § 4311 discrimination claims.  An employee [(1)] 'first has the burden of showing, by a preponderance of the evidence, that his or her protected status was a substantial or

1    motivating factor in the adverse employment action; [(2)] the employer may then

2    avoid liability only by showing, as an affirmative defense, that the employer would

3    have taken the same action without regard to the employee's protected status.'"

4    *Belaustegui*, 36 F.4th at 924 (quoting *Huhmann*, 874 F.3d at 1105).

5        WLAD "proscribes discrimination in employment on the basis of sex, race,

6    sexual orientation, and other protected characteristics. . . .  WLAD also prohibits

7    employers from retaliating against employees who oppose discriminatory

8    practices." *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018) (citing

9    RCW 49.60.030; RCW 49.60.210(1)).  A WLAD discrimination plaintiff must

10   demonstrate that their protected status was a "substantial factor" in an employer's

11   adverse employment action.  *Scrivener v. Clark Coll.*, 334 P.3d 541, 546 (Wash.

12   2014).  A WLAD retaliation plaintiff establishes a prima facie case of retaliation

13   by demonstrating "three things: (1) the employee took a statutorily protected

14   action, (2) the employee suffered an adverse employment action, and (3) a causal

15   link between the employee's protected activity and the adverse employment

16   action." *Id.* (citations omitted).

17       "Once the plaintiff establishes a prima facie case, the burden of production

18   shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

19   adverse employment action." *Scrivener*, 334 P.3d at 546.  If the defendant meets

20   that burden, then the plaintiff must "produce sufficient evidence that [the

ORDER - 20

1    defendant's] alleged nondiscriminatory reason" is pretextual.  *Id.* (citation and

2    quotations omitted).  "Evidence is sufficient to overcome summary judgment if it

3    creates a genuine issue of material fact that the employer's articulated reason was a

4    pretext for a discriminatory purpose."  *Id.* (citations omitted).

5        The parties seek summary judgment on various portions of the

6    discrimination and retaliation claims at issue.[2]

7

---

8    [2] Mr. Kinnune' motion references RCW 38.40.060 and RCW 73.16.033, which he

9    argues "provide[] for paid military leave for army personnel" and "a right to

10   reemployment analogous to what is provided by USERRA."  ECF No. 38 at 19.

11   He extrapolates that "[t]hese state-protected rights . . . are inextricably connected to

12   [Mr.] Kinnune's 'military status,' are therefore protected under RCW 49.60.180[]"

13   and RCW 49.60.210.  ECF No. 38 at 19.  In other words, Mr. Kinnune argues that

14   WLAD extends to his right to reemployment under state law, folding any alleged

15   discrimination for military leave or retaliation for exercising state reemployment

16   rights into his WLAD claim.  ECF No. 38 at 19.  Mr. Kinnune did not plead a

17   cause of action for discrimination or retaliation due to his military absence, or

18   efforts at reemployment, under state law.  ECF No. 2-2.  As DSHS has noted,

19   Mr. Kinnune's complaint alleges only his "military status" as the basis of his

20   WLAD claims.  ECF No. 2-2 at 7; ECF No. 48 at 17.  Mr. Kinnune does not

ORDER - 21

1

2

*1.  Mr. Kinnune was a Member of a Protected Class Under USERRA and WLAD and Engaged in Protected Activity*

USERRA provides that "[a] person who is a member of . . . a uniformed

3

service shall not be denied initial employment, reemployment, retention in

4

employment, promotion, or any benefit of employment by an employer on the

5

basis of that membership."  38 U.S.C. § 4311(a).  "Military status" is among

6

WLAD's protected classes.  RCW 49.60.030(1).

7

Employers may not retaliate against employees for exercising USERRA

8

rights.  *Wallace*, 479 F.3d at 624-25, 625 n.1.  Under WLAD, an employee's

9

complaints that conditions of employment are not in compliance with law, or

10

efforts to oppose unlawful practices, are protected activity.  *Currier v. Northland*

11

*Servs., Inc.*, 332 P.3d 1006, 1012-13 (Wash. 2014); *Coville v. Cobarc Servs., Inc.*,

12

869 P.2d 1103, 1106 (Wash. Ct. App. 1994).

13

DSHS does not dispute that Mr. Kinnune is a member of a protected class

14

under USERRA and under WLAD.  ECF No. 43 at 14-16; ECF No. 62 at 7-9

15

16

address the issue in reply.  ECF No. 53.

17

The Court considers Mr. Kinnune's military leave of absence related to his

18

"military status" under WLAD.  RCW 49.60.030(1).  The Court declines to

19

entertain any cause of action based upon other Washington statutory provisions

20

until such causes of actions are stated in an amended pleading.

ORDER - 22

(conceding that Mr. Kinnune's military status may serve as the basis of USERRA and WLAD discrimination claims). Further, DSHS "concedes that [Mr.] Kinnune took some protected actions under USERRA." ECF No. 62 at 8. DSHS does not dispute that Mr. Kinnune engaged in protected activity when he (1) communicated military orders to DSHS in June 2018, April 2019, and May 2020; (2) sought reemployment after his military service ended; (3) emailed DSHS managers on August 30, 2020, about USERRA rights; (4) communicated with a DSHS manager on September 2, 2020, and forwarded material on USERRA; (5) reported a hostile work environment on September 24, 2020; and (6) participated in ESH fact-finding related to his hostile work environment report. ECF No. 48 at 16.

The parties disagree as to whether Mr. Kinnune engaged in protected activity in two situations: when he (1) spoke about changes to his job with supervisors on August 28, 2020; and when he (2) reported an email that a supervisor sent to him, related to holiday communications in late 2020. ECF No. 48 at 16; ECF No. 53 at 8-10. The Court briefly summarizes the undisputed facts related to each situation.

Barbara "Joey" Frost was Kinnune's supervisor, and Ronda Kenney was DSHS's Chief Operations Officer. ECF No. 57 at 2 ¶ 7, 4 ¶ 19. Mr. Kinnune met with Ms. Frost and Ms. Kenney on August 28, 2020, to discuss his return to work on August 31, 2020. ECF No. 57 at 12 ¶ 86. The specifics of what was discussed

1  at the meeting are disputed, but the parties broadly agree that Mr. Kinnune's

2  supervisors told him what the details of his role would be upon his return.  *See*

3  ECF No. 38-1 at 14-15 ¶¶ 86-90; ECF No. 49 at 12-13 ¶¶ 86-90.  Mr. Kinnune was

4  hesitant to accept the conditions of employment discussed at the meeting.  ECF

5  No. 39-3 at 55 (communication record regarding meeting).

6       There is evidence suggesting that Mr. Kinnune may have asserted his

7  USERRA rights during the meeting.  When asked whether Mr. Kinnune

8  "specifically raised his rights as a military service member during that meeting,"

9  Ms. Kenney testified, "I don't remember that conversation, but if he says he did

10  that, then I'm sure he said something."  ECF No. 39-1 at 164.  The day after the

11  meeting, Mr. Kinnune sent an email to Ms. Frost and Ms. Kenney in which he

12  raised the Servicemembers Civil Relief Act ("SCRA") and linked to a Justice

13  Department website concerning the SCRA.  ECF No. 39-3 at 29.  In a second

14  email sent on August 30, 2020, Mr. Kinnune clarified that the "correct" and

15  "actual" law was USERRA and provided a link to a Justice Department website

16  concerning USERRA.  ECF No. 39-3 at 29.

17       While Mr. Kinnune "need not cite the appropriate sections of the statute

18  when seeking reemployment or notify the employer of its legal obligation to

19  reemploy him," he must assert some legal right for a communication to be

20  considered protected activity.  *Wallace*, 479 F.3d at 625.  There is a genuine

dispute of fact as to whether Mr. Kinnune asserted his legally protected rights during the August 28, 2020 meeting with his supervisors.

Mr. Kinnune also argues that he engaged in protected activity on December 14, 2020. ECF No. 53 at 9-10. On December 13, 2020, while on leave with the Sheriff's Office, Mr. Kinnune sent a holiday email from his personal account to DSHS employees. ECF No. 39-3 at 142-43. The next day, Ms. Frost responded, telling Mr. Kinnune to refrain from sending emails to DSHS staff from his personal account while he was on leave and to refrain from including "religious connotations" in his email communications. ECF No. 39-3 at 141-42. Mr. Kinnune forwarded Ms. Frost's email to his supervisors and human resources and expressed his concerns that it was a "reprisal." ECF No. 39-3 at 137-38. Mr. Kinnune explained that he believed Ms. Frost had retaliated against his hostile work environment complaint. ECF No. 39-3 at 138. Mr. Kinnune indicated that he would be consulting a USERRA lawyer and called for an investigation. ECF No. 39-3 at 138-39.

DSHS argues that "[Ms.] Frost's response to [Mr.] Kinnune's 2020 holiday email is insufficient to be an 'adverse employment action.'" ECF No. 48 at 17-18. DSHS appears to misunderstand Mr. Kinnune's motion. Mr. Kinnune seeks a judicial finding that his December 14, 2020 email was a protected activity, not that Ms. Frost's response to that email was an adverse employment action. ECF No. 38

1  at 20.  There is no factual dispute about the content of the email and the Court

2  concludes that the email constitutes protected activity, as Mr. Kinnune expressed a

3  legal right and cited to USERRA.  ECF No. 39-3 at 137-38.

4         In summary, there remains no genuine dispute of fact that Mr. Kinnune was

5  a member of a protected class for USERRA and WLAD purposes and that he

6  engaged in protected activity by attempting to assert his rights under those statutes,

7  as listed above.  There is a genuine dispute of fact as to whether Mr. Kinnune

8  engaged in protected activity during the August 28, 2020, meeting with his

9  supervisors.  The Court finds no genuine dispute that Mr. Kinnune's December 14,

10  2020, email was protected activity.  ECF No. 39-3 at 138.

11        *2.  Adverse Employment Action*

12        An adverse employment action under federal or state law is established

13  where a plaintiff "show[s] that a reasonable employee would have found the

14  challenged action materially adverse," in that it would have "dissuaded a

15  reasonable worker from making or supporting a charge of discrimination."

16  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citation and

17  quotations omitted); *see also Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254,

18  1271 (W.D. Wash. 2020); *Boyd v. State*, 349 P.3d 864, 870 (Wash. Ct. App. 2015).

19  "[W]hether a particular action would be viewed as adverse by a reasonable

20  employee is a question of fact appropriate for a jury."  *Boyd*, 349 P.3d at 870

1   (citing *Burlington*, 548 U.S. at 71).  In the context of a USERRA claim, an

2   "adverse employment action" may be found in the denial of benefits or promotions

3   that should have been attained if the employee were given his escalator position,

4   with reasonable certainty.  *See Huhmann*, 874 F.3d at 1108-09.

5             i.   Miscellaneous Adverse Employment Actions

6         DSHS argues that "[Mr.] Kinnune lacks any evidence to demonstrate an

7   adverse employment action."  ECF No. 43 at 17.  Mr. Kinnune responds that the

8   evaluation of whether an employment action was "adverse" is a factual question

9   inappropriate at summary judgment, and that this factual question must be

10  addressed as to each of the employment actions he alleges were adverse, which

11  include the following: (1) DSHS "removed" him as leader of the Ethics Committee

12  and CISM Team; (2) DSHS subjected him to increased oversight; (3) DSHS

13  changed the expectations of his employment; (4) his supervisors unjustly wrote

14  him up; (5) his supervisors threatened him with future discipline; (6) he was given

15  "menial duties," (7) DSHS fired his support chaplain; (8) DSHS took away his

16  private office and cell phone; (9) DSHS refused to allow him to work for a regional

17  CISM Team; (10) his supervisor admonished him for sending a holiday greeting;

18  (11) DSHS denied him procedural protections when he complained of harassment;

19  (12) DSHS subjected him to a meritless investigation.  ECF No. 58 at 9-13.

20

ORDER - 27

Many of these arguments cover factual ground also relevant to

Mr. Kinnune's USERRA reemployment claim.  As the Court explained above,

several factual disputes exist as to whether Mr. Kinnune should have been

reappointed to leadership positions on the Ethics Committee and CISM Team,

whether, upon his return, he lost status, was assigned lesser duties, or lost benefits.

*See* discussion *supra* Part A.2.  Those same facts, if found in Mr. Kinnune's favor,

may support his discrimination and retaliations claims if he can further show that

he was denied the benefits of his escalator position because he was a member of

the uniformed services or exercised his USERRA rights.  *See Huhmann*, 874 F.3d

1105-09.  Issues of fact preclude a finding that he was denied those benefits of

employment, and if so denied, whether a reasonable employee would consider the

denial a "materially adverse" employment action.  *See Boyd*, 349 P.3d at 870.

Separately, Mr. Kinnune offers incidents of allegedly unjustified discipline,

threats of future discipline, the denial of his request to work for a regional CISM

Team, and the denial of procedural protections in response to his complaints of

harassment, as adverse employment actions.  ECF No. 58 at 9-13.  DSHS replies,

summarily and incorrectly, that "[t]he only qualifying incident of discrimination

[Mr.] Kinnune identifies is a 'hostile work environment' that [led] to his

constructive discharge."  ECF No. 62 at 7-8.  Hostile work environment and

ORDER - 28

constructive discharge, discussed below, are two of several alleged incidents of adverse employment actions.  ECF No. 58 at 9-13.

The relevant case law is replete with adverse employment actions that are more plainly "adverse," for example: a terminated contract, *Currier*, 332 P.3d at 1013-14, poor performance ratings leading to termination, *Cornwell*, 430 P.3d at 236, a denied promotion, *Belaustegui*, 36 F.4th at 925-26, or a denied bonus, *Huhmann*, 874 F.3d at 1109.  However, the Court finds there is a genuine dispute of material fact as to the severity of the employment actions against Mr. Kinnune experienced and, more importantly, whether those actions would have dissuaded a reasonable worker from making a charge of discrimination.  *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 68.

DSHS cites out-of-circuit authority to argue that reprimands should not be considered an adverse employment action.  ECF No. 48 at 15, 17-18 (citing *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998).  The case predates *Burlington N. & Santa Fe Ry.*, a key Supreme Court case addressing the question.  *See* 548 U.S. at 68.  In addition, the Ninth Circuit has more recently explained that "merely investigating an employee—regardless of the outcome of that investigation—likely can support" a retaliation claim, as can "intentionally unfavorable assignments," *Campbell v. Haw. Dep't of Educ.*. 892 F.3d 1005, 1022 (9th Cir. 2018) (citations

omitted), and "undeserved poor performance ratings," *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1225 (9th Cir. 2012).

Mr. Kinnune has put forth evidence suggesting that he was the subject of unjustified admonishments from supervisors, ECF No. 39-3 at 54-55; that he was denied the benefit of internal procedures meant to safeguard against unwarranted accusations of misconduct, ECF No. 39-1 at 14-15; that, when he complained of harassment, his complaint was not properly investigated, ECF No. 60; and that he was investigated for something that did not warrant an investigation, ECF No. 39-1 at 168-69. These actions, particularly when taken together, could support a reasonable fact finder's conclusion that Mr. Kinnune was subjected to one or more adverse employment actions.

DSHS's motion for summary judgment on the question of whether Mr. Kinnune suffered an adverse employment action is denied.

ii.  Hostile Work Environment and Constructive Discharge

District courts in this circuit have recognized that hostile work environment claims are cognizable under USERRA. *See, e.g.*, *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1013 (C.D. Cal. 2013); *Belaustegui v. Int'l Longshore & Warehouse Union*, No. 19-cv-9955-FLA (AFMx), 2021 WL 1742247 (C.D. Cal. Apr. 26, 2021), *vacated on other grounds*, 36 F.4th 919 (2022). WLAD also provides a remedy for a hostile work environment, applying a

similar standard.  *Blackburn v. Dep't of Soc. & Health Serv.*, 375 P.3d 1076, 1081 (Wash. 2016).

A plaintiff establishes a hostile work environment by demonstrating "behavior sufficiently severe or pervasive to alter the conditions of their employment."  *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004) (citation, alteration, and quotations omitted).  Courts consider the "totality of the circumstances" when evaluating whether a hostile work environment exists, including whether the conduct was both subjectively and objectively abusive.  *Washington v. Horning Bros., LLC*, 339 F. Supp. 3d 1106, 1117 (E.D. Wash. 2018).  Courts should consider the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).

Similarly, a plaintiff may establish a hostile work environment under WLAD by demonstrating "that the harassment (1) was unwelcome, (2) was because of a protected characteristic,[3] (3) affected the terms or conditions of employment, and

---

[3] The Court considers the discriminatory motive factor for Mr. Kinnune's USERRA and WLAD claims below.  This section addresses only whether the

(4) is imputable to the employer.[4]" *Blackburn*, 375 P.3d at 1081.

"Constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Wallace*, 479 F.3d at 625. "Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question." *Id.* at 626.

Similarly, under Washington law, "[t]he elements of a claim of constructive discharge are that (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign." *Peiffer v. Pro-Cut Concrete & Breaking, Inc.*, 431 P.3d 1018, 1031 (Wash. Ct. App. 2018).[5]

_____

conduct may amount to a hostile work environment as a matter of law.

[4] This element is not in dispute. *See* ECF Nos. 38, 43.

[5] In Washington, "constructive discharge" is one way for a plaintiff can establish the "tort for wrongful discharge in violation of public policy," which "is a narrow exception to the at-will doctrine." *Peiffer*, 431 P.3d at 1031. The parties do not

DSHS argues that "[Mr.] Kinnune is unable to show that any hostile work environment is . . . sufficiently severe, or that any conduct relates to his protected class." ECF No. 43 at 14. Citing the same list of adverse employment actions summarized above, *see* discussion *supra* Part B.2.i, Mr. Kinnune argues that "[t]aken together, each of the above adverse employment actions coalesced to create a hostile work environment" and that "DSHS employees engaged in a coordinated and covert effort to create a work environment that was so hostile, unfair, and intolerable that Kinnune would resign in frustration." ECF No. 58 at 9-10.

The Ninth Circuit has cautioned district courts not to usurp the role of the fact finder on the question of whether the circumstances of employment amount to constructive discharge. *Wallace*, 479 F.3d at 628. As explained above, there remain outstanding questions of fact surrounding a number of employment actions that may be materially adverse.

---

raise the issue, but there may be a question whether Mr. Kinnune has sufficiently pleaded the tort. *See* ECF No. 2-2. Given the similarities between the federal and state standards for constructive discharge, the Court proceeds to its analysis, but the parties may wish to brief the issue further in advance of trial.

ORDER - 33

1    In addition to those circumstances already discussed, the evidence indicates

2 that in January 2019, Ms. Ross publicly accused Mr. Kinnune of sexual

3 misconduct, bullying, and discrimination, which included accusations of criminal

4 conduct.  ECF No. 39-1 at 35-51, 111-16, 135-42.  There is a hole in the record as

5 to what became of these accusations.  It is not clear if they were investigated,

6 redressed, or reported.  Matthew McCord, Investigations Manager for ESH,

7 submits a declaration discussing the procedural irregularities surrounding this

8 accusation and the other, later investigations that involved Mr. Kinnune.  ECF No.

9 60.  With these procedural irregularities as a backdrop, the record provides

10 sufficient circumstantial evidence for a reasonable fact finder to find a pattern of

11 harassment sufficiently severe and pervasive to have altered the conditions of

12 Mr. Kinnune's employment and forced him out of ESH.  *See Pa. State Police*, 542

13 U.S. at 133; *Blackburn*, 375 P.3d at 1081.  DSHS's motion for summary judgment

14 on Mr. Kinnune's hostile work environment claim is denied.

15        *3.  Discriminatory Motive*

16        A USERRA discrimination or retaliation plaintiff must demonstrate "that his

17 or her protected status was a substantial or motivating factor in the adverse

18 employment action."  *Belaustegui*, 36 F.4th at 924.  A WLAD discrimination

19 plaintiff must demonstrate that his protected status was a "substantial factor" in an

20 adverse employment action.  *Scrivener*, 334 P.3d at 546.  A WLAD retaliation

ORDER - 34

1    plaintiff must demonstrate "a causal link between the employee's protected activity

2    and the adverse employment action."  *Cornwell*, 430 P.3d at 234.  At summary

3    judgment, a WLAD plaintiff's burden is "one of production, not persuasion."

4    *Cornwell*, 430 P.3d at 412.

5        It is undisputed that DSHS supervisors and employees knew of

6    Mr. Kinnune's protected status and that at least some of his actions were protected

7    activity.  ECF No. 48 at 16; ECF No. 62 at 8; *see Cornwell*, 430 P.3d at 235 (a

8    plaintiff may rely on the fact that "the employer had knowledge of the action" as

9    evidence of discrimination sufficient to survive summary judgment.).  Mr. Kinnune

10   offers sufficient evidence that the adverse employment actions against him were

11   motivated by retaliation for exercising his USERRA and WLAD rights and were

12   discriminatory based on his military status.

13       First, Mr. Kinnune's supervisor, Ms. Frost, admits that "every single written

14   criticism of Mr. Kinnune's performance [came] after he went on military service

15   leave."  ECF No. 39-1 at 74.  Proximity in time between a protected activity and

16   adverse employment action may support a finding of discriminatory motive.

17   *Cornwell*, 430 P.3d at 236-37 (citing *Raad v. Fairbanks N. Star Borough Sch.*

18   *Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)).

19       Second, Mr. Hill testified that, while Mr. Kinnune was on leave, ESH staff

20   expressed "frustration" about Mr. Kinnune's rehiring after service leave, and

ORDER - 35

Ms. Frost and Ms. Ross made "increasingly negative comments" about him, indicating their preference that Mr. Kinnune not return.  ECF No. 39-2 at 28, 32.  Mr. Hill was asked not to tell Mr. Kinnune about such conversations.  ECF No. 39-2 at 25-27, 32.  The HR Business Partner for ESH, Amy Jo Carlson, testified that it was her "feeling" that Ms. Frost did not want Mr. Kinnune back at ESH, and that circumstances surrounding his return were "really odd."  ECF No. 61 at 54-56.  A USERRA plaintiff may rely upon evidence that military service strained relations with his employer, for an inference of discriminatory motive.  *Wallace*, 479 F.3d at 625 ("evidence in the record suggests [the plaintiff's] relationship with his superiors was strained at least in part due to his military service, which permits an inference that adverse employment actions were taken . . . because of his exercise of rights protected by USERRA.").

Third, there is evidence that Ms. Frost admonished Mr. Kinnune for using a personal email address but did not do the same to Ms. Ross.  ECF No. 61 at 39-40.  And, as discussed above, there is evidence that Mr. Kinnune was disproportionately subject to disciplinary write-ups following his return from military service.  Disparate treatment of employees may serve as circumstantial evidence of discriminatory intent.  *Munoz v. InGenesis STGI Partners, LLC*, 182 F. Supp. 3d 1097, 1104 (S.D. Cal. 2016).

1    Fourth and finally, and as discussed above, there is evidence that DSHS

2    employees did not adhere to DSHS policies governing the investigation of

3    misconduct and harassment as related to Mr. Kinnune by (1) failing to investigate

4    Mr. Kinnune's alleged misbehavior, (2) failing to properly investigate

5    Mr. Kinnune's complaints of harassment, and (3) investigating Mr. Kinnune in an

6    unusual manner.  ECF No. 58 at 16 (highlighting evidence of departure from

7    policies).  An employer's failure to follow its own policies may serve as

8    circumstantial evidence of discriminatory motive.  *Munoz*, 182 F. Supp. 3d at

9    1104.

10    Mr. Kinnune has presented sufficient evidence of discriminatory motive;

11    DSHS's motion for summary judgment on his discrimination and retaliation claims

12    is denied.

13    *4.  Affirmative Defenses*

14    An employer is not liable for discrimination under USERRA if it shows, as

15    an affirmative defense, "that the employer would have taken the same action

16    without regard to the employee's protected status."  *Wallace*, 479 F.3d at 624

17    (quoting *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002)).[6]

18

19    _____

       [6] DSHS is "not offering an affirmative defense as to [Mr.] Kinnune's WLAD

20    discrimination claim."  ECF No. 48 at 15.

ORDER - 37

1    Mr. Kinnune argues that "DSHS has not asserted any affirmative defense to

2    justify acts of discrimination."  ECF No. 38 at 18.  DSHS argues that its failure to

3    plead should be excused as there is no prejudice.  ECF No. 48 at 14 (citing *Garcia*

4    *v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019)).  DSHS seeks permission to

5    argue "that any discriminatory action would have been taken in the absence of

6    [Mr.] Kinnune's military service."  ECF No. 48 at 14-15.

7    Courts will entertain a meritorious affirmative defense raised for the first

8    time at summary judgment where there is no prejudice.  *Garcia*, 918 F.3d at 1008-

9    09.  There is no prejudice "where an 'affirmative defense would have been

10    dispositive' if asserted 'when the action was filed.'"  *Id.* (quoting *Owens v. Kaiser*

11    *Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

12    As an initial observation, the affirmative defense that DSHS seeks to raise

13    would not have been dispositive if raised in its Answer, as it presents significant

14    disputes of fact.  Adding to the confusion, DSHS fails to argue that it would have

15    undertaken any particular adverse employment action against Mr. Kinnune without

16    regard to Mr. Kinnune's protected status or protected activity.  ECF No. 48 at 15.

17    Instead, DSHS argues that it undertook no adverse employment actions against

18    Mr. Kinnune.  ECF No. 43 at 2; ECF No. 48 at 15; ECF No. 62 at 7.

19    In other words, DSHS asks permission to assert an affirmative defense but

20    offers no argument or evidence to support it.  To be excused for a failure to plead

1    an affirmative defense, at minimum, the movant must demonstrate the affirmative

2    defense is available.  *See, e.g.*, *Garcia*, 918 F.3d at 1008; *Owens*, 244 F.3d at 713.

3    DSHS has not done so.

4         However, Mr. Kinnune bears the burden for his USERRA reemployment

5    claim and must demonstrate that he was denied the benefits and status of his

6    "escalator position." *Belaustegui*, 36 F.4th at 923.  To oppose Mr. Kinnune's

7    reemployment claim, DSHS may argue and present evidence indicating that

8    Mr. Kinnune's escalator position was the one he received.  Much of this same

9    evidence would likely be presented as an "affirmative defense" to Mr. Kinnune's

10   discrimination and retaliation claims.  *Belaustegui*, 36 F.4th at 924.

11        The Court agrees that DSHS has not justified its failure to plead that it

12   "would have taken the same action without regard to [Mr. Kinnune's] protected

13   status." *Belaustegui*, 36 F.4th at 924.  However, as a practical matter, argument

14   and evidence indicating that the changes in Mr. Kinnune's employment would

15   have occurred due to operational changes at ESH remains relevant and admissible

16   in response to Mr. Kinnune's reemployment claim.

17        Insofar as Mr. Kinnune seeks to preclude argument that any alleged adverse

18   employment actions would have occurred regardless of his military leave or status,

19   DSHS has not demonstrated a genuine intent to present such a line of argument,

20   and the Court considers the request moot.

**C. Liquidated Damages/Willfulness**

38 U.S.C. § 4323(d)(1)(C) provides for liquidated damages where a USERRA violation was willful.  A violation is willful "if the employer either knew or showed reckless disregard for whether its conduct was prohibited by [USERRA]."  20 C.F.R. § 1002.312; *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615 (1993) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 133 (1985)).  "An intent to violate the statute is not necessary; but it is also not sufficient that the employer simply knew of its potential applicability. . . . Plaintiff has the burden of proving willfulness, which may be shown by circumstantial evidence."  *Nevada*, 817 F. Supp. 2d at 1251 (citing *Trans World Airlines*, 469 U.S. at 126-28, 126 n.19).  There must be more than mere knowledge of the potential applicability of the statute.  *Paxton v. City of Montebello*, 712 F. Supp. 2d 1017, 1021 (C.D. Cal. 2010).

DSHS argues that there is no evidence it acted willfully or with reckless disregard, as it sought the advice of counsel when Mr. Kinnune mentioned USERRA.  ECF No. 43 at 20.  Mr. Kinnune explains that DSHS has refused to produce its communications with the Attorney General's Office, asserting privilege.  ECF No. 58 at 20.  Mr. Kinnune argues that DSHS may not abuse the attorney-client privilege by pursuing an argument that is indisputable without access to the privileged materials.  ECF No. 58 at 20.

The Court agrees that "parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)). As the record stands, DSHS shall not be permitted to argue to the fact finder that its consultations with counsel evidence a lack of willfulness. DSHS may move for reconsideration along with evidence demonstrating that it has disclosed sufficient material for Mr. Kinnune to dispute the theory, or for a limited late disclosure of relevant evidence to remedy the disparity, if it intends to pursue the theory.

More importantly for the purposes of summary judgment, even if DSHS employees consulted with counsel about their USERRA obligations, the fact would not be legally dispositive of the question of willfulness. DSHS cites to *Paxton* to establish that it is entitled to summary judgment on willfulness. ECF No. 43 at 19-20; ECF No. 62 at 9-10. In *Paxton*, the plaintiffs moved, upon a set of stipulated facts, for an award of liquidated damages, which the Central District of California denied. 712 F. Supp. 2d at 1018-21.

Here, there are many relevant facts in dispute, and it is DSHS's burden to demonstrate that it is entitled to judgment as a matter of law. A review of the record indicates that DSHS has failed to do so. There remains little explanation for DSHS's departure from standard procedure related to the various investigations

involving Mr. Kinnune.  *See* ECF No. 39-1 at 35-51, 111-16, 135-42; ECF No. 60.

DSHS employees expressed dissatisfaction with their obligation to rehire

Mr. Kinnune, and there is little explanation for why the circumstances of

Mr. Kinnune's position changed upon his return from military service.  ECF No.

39-2 at 25-28, 32; ECF No. 61 at 54-56.  Here, as in *Nevada*, 817 F. Supp. 2d at

1250-51, and *Montoya*, 987 F. Supp. 2d at 1022, there are issues of fact that

preclude summary judgment on the question of willfulness.  DSHS's motion is

denied.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Mr. Kinnune's Motion for Partial Summary Judgment, **ECF No. 38**, is

**GRANTED in part** and **DENIED in part**.

2.    DSHS's Motion for Summary Judgment, **ECF No. 43**, is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this

order and provide copies to counsel.

**DATED** January 26, 2024.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 42